[No. C049783. Third Dist. July 27, 2006.]

RANCHO MURIETA AIRPORT, INC., Plaintiff and Respondent, v. COUNTY OF SACRAMENTO, Defendant and Appellant; DEPARTMENT OF TRANSPORTATION, Real Party in Interest and Respondent.

## COUNSEL

Robert A. Ryan, Jr., County Counsel, and Krista C. Whitman, Deputy County Counsel, for Defendant and Appellant.

Wagner Kirkman Blaine Klomparens & Youmans, Douglas E. Kirkman, and Roy R. Girard for Plaintiff and Respondent.

Bruce A. Behrens, Thomas C. Fellenz, Ronald W. Beals, Manuel Alvarado and Raiyn Bain for Real Party in Interest and Respondent.

## OPINION

**RAYE, Acting P. J.**—In these mandamus proceedings to compel the County of Sacramento (County) to trim or remove its trees from an airport "clear zone," County would like us to weigh the fate of the Swainson's hawk and the valley elderberry longhorn beetle against the convenience of passengers to land at the Rancho Murieta Airport at night. The trial court refused to be drawn into a battle of the species unwarranted by the straightforward petition by plaintiff Rancho Murieta Airport, Inc. (Airport), and County's failure to initiate any other action.

The court granted Airport's petition to compel County to trim or remove those trees on its property that obstructed navigable airspace along the south side of the runway or to obtain a permit to maintain the offending trees pursuant to its ministerial duties defined by Public Utilities Code section

21659 and its municipal ordinance No. 301-24. The court did not decide the parties' responsibilities, if any, under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) or who ultimately should pay for the costs of trimming and removal since those issues were not raised by the petition. We affirm.

## I. LEGAL CONTEXT

This is a simple case resolved by the application of one state statute and one county ordinance. Public Utilities Code section 21659, pertaining to airport obstructions, states: "No person shall construct or alter any structure or permit any natural growth to grow at a height which exceeds the obstruction standards set forth in the regulations of the Federal Aviation Administration relating to objects affecting navigable airspace contained in Title 14 of the Code of Federal Regulations, Part 77, Subpart C, unless a permit allowing the construction, alteration, or growth is issued by the department." (Pub. Util. Code, § 21659, subd. (a).)

Similarly, Sacramento County Ordinance No. 301-24 provides that "no tree or other object of natural growth shall be allowed to grow and no building or appurtenance thereon, tower or other structure shall be erected or maintained to exceed the height limits developed for aircraft approach and take-off areas which are designated on the Comprehensive Zoning Plans . . . ."

Despite the plain language of the statute and the ordinance, more than 65 trees on County property exceed the height limits developed for safe aircraft approach and departure paths and encroach on the navigable airspace at the airport. County offers an assortment of legal and equitable arguments to justify its recalcitrance. But sorely missing is any authority to support its untenable position that it can evade its statutory and municipal duty to maintain its property so as not to endanger the health and safety of the public. Our review is de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

## II. THE BARE FACTS

Both sides provide us with a long chronology of events largely irrelevant to the straightforward issue presented. Simply stated, County acquired property adjacent to the airport. A variance, obtained about 10 years earlier, permitted the offending trees to intrude on the navigable airspace during day operations. Three years later, night operations began. Thirteen years later, the Federal Aviation Administration (FAA) completed an aeronautical study concluding that many of County's trees needed to be removed or topped, or lighting had to be installed. The California Department of Transportation (Caltrans)

recommended removal of the trees rather than the installation of lights. Airport obtained a number of variances from Caltrans to allow nighttime operations to continue while Airport attempted to resolve the issue with County.

Five more years passed. There was a flurry of activity in 2001, but finally in 2002 Caltrans notified Airport that its permit for both day and night operations would be suspended on May 31, 2002. County thereafter trimmed or removed the trees at the west end of the runway, and Airport was allowed to resume daytime operations.

In 2003 Caltrans again notified County that section 21659 of the Public Utilities Code prohibited the tree obstructions located on County land south of the airport's runway, and that County was obligated to trim or remove the trees. The County Board of Supervisors disagreed because the trees were present at the time the airport was first permitted. In response, Caltrans insisted it did not "grandfather a natural growth nor does it grandfather a known dangerous condition."

County contends it has no obligation to trim or remove the offending trees and Airport must seek an encroachment permit or easement to trim or remove the trees on County property. Moreover, in County's view, the approval of such an application is a "discretionary" project subject to environmental review under CEQA and, perhaps, a take permit pursuant to the Endangered Species Act. (16 U.S.C. §§ 1538, 1539.) In February 2005 the trial court granted Airport's petition for a writ of mandate as to County.

### III.  MANDAMUS

■  A trial court may issue a writ of mandamus to a public body "to compel the performance of an act which the law specially enjoins." (Code Civ. Proc., § 1085, subd. (a).) There are only two requirements for the issuance of the writ: a respondent's clear, present, and usually ministerial duty and a petitioner's clear, present, and beneficial right to performance of the duty. (*California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 827 [117 Cal.Rptr.2d 595].)

County resists the obvious import of the statute and ordinance set forth above with the dubious contention that neither identifies the "person" responsible for maintaining navigable airspace, and "logically," County could not be the correct entity. County's logic is predicated on its notion that County does not benefit from the operation of the airport, and therefore it should not be required to incur the expense of maintaining its property so as not to obstruct navigable airspace.

County's self-serving definition of logic and fairness simply ignores any fair reading of the language of the statute or the ordinance. The statute states plainly that "[n]o person shall . . . permit any natural growth to grow at a height which exceeds the obstruction standards set forth in the regulations of the Federal Aviation Administration." Obviously, the landowner is a person who would permit the prohibited obstruction.

█ Similarly, the county ordinance provides that "no tree or other object of natural growth shall be allowed to grow and no building or appurtenance thereon, tower or other structure shall be erected or maintained to exceed the height limits developed for aircraft approach and take-off areas which are designated on the Comprehensive Zoning Plans . . . ." (Sac. County Ord. No. 301-24.) The party who would allow the offending growth, once again, would be the landowner. Thus, County's duty to trim or remove the offending trees is clearly articulated in both the statute and the ordinance, notwithstanding County's distaste for the obligation it assumed as a landowner adjacent to an airport. There is nothing in either the statute or the ordinance to exempt any landowner who does not benefit from clearing the navigable airspace.

## IV.  VARIANCE

County insists its duty to remove the obstructions was abrogated by the variances issued by Caltrans in 1970 and 1990. The trial court found otherwise. "[S]ince at least 1995, Caltrans has notified Airport that the variance shall be applicable only to day operations, and not night operations. [Citation.] Since 1995, Caltrans has consistently told Airport that the trees penetrating the 7:1 transitional surface are hazards to night operations at the airport and that for night operations to be permitted at the airport, the trees will have to be removed, trimmed, or permanently obstruction lighted. [Citation.] Caltrans' April 2, 2001, letter specifically notified Airport that if no action was taken to correct the problem, night operations at the Airport would be suspended effective April 30, 2001. [Citation.] And again on April 29, 2002, Caltrans notified Airport of the obstructing trees and informed Airport that '[t]he Department is required to suspend night operating privileges until the south side obstructions (trees) which penetrate the FAR Part 7:1 Transitional Surface are removed or trimmed/lighted. . . . [¶] In accordance with Public Utilities Code Section 21668.2, the airport permit will be suspended as of May 31, 2002.' [Citation.] The letter further informed Airport that '[i]f the south side obstructions are removed/trimmed/lighted, you will be able to resume night operations.' [Citation.] Although the precise date of the suspension is the subject of some uncertainty, at some point Caltrans suspended Airport's permit for night operations because the tree obstructions were not trimmed/removed or lighted. Accordingly, any claim that Caltrans has granted a variance for the obstructing trees must fail. The evidence

overwhelmingly establishes that Caltrans has not permitted, and will not permit, night operations at the Airport unless and until the obstructing trees are removed, trimmed, or lighted."

County asks us to ignore the court's factual findings, ignore the evidence, ignore Caltrans's statutory authority to suspend or revoke a permit at any time where the site may no longer be safely used by the general public because of a change in physical conditions (Pub. Util. Code, §§ 21668, 21668.2), and to find as a matter of law that the variances allow the trees to obstruct the navigable airspace. At the same time, County insists it is not asking us to "grandfather" in the trees that were on the property at the time the original and corrected permits were issued even though it relies on evidence that an arborist concluded the trees must have exceeded the height restrictions in 1970, and undoubtedly by 1990.

County cites no authority, and we have found none, to support its dangerous proposition that because Caltrans initially granted a variance, the variance lasts in perpetuity. Additionally, County offers no explanation how it could obtain any vested right to allow the trees to obstruct the airspace in derogation of public safety. Thus, in light of County's failure to provide relevant authority or a plausible rationale for evading the explicit terms of the statute and ordinance, we affirm the court's sound conclusion that Airport's dated variances do not allow County's trees to continue to jeopardize public safety.

Even if we were to assume that, as County maintains, the 1970 permit and the 1990 corrected permit granted Airport a variance for both day and night operations, County does not suggest that it ever applied for or obtained a similar variance. Rather, County seems to suggest that its trees were covered by Airport's variance, a position at odds with its initial determination that it was obligated to comply with Public Utilities Code section 21659. Although the Sacramento County Board of Supervisors had directed staff to investigate obtaining a permit to save some of the trees, County reversed course, claiming it did not have the duty to comply with section 21659 or its own ordinance. Apparently, County still has not sought its own variance to permit some of its trees to intrude on the navigable airspace despite admonitions from Caltrans, the FAA, and the trial court.

Instead, County wages a fruitless battle in the wrong lawsuit. The trial court properly limited the issues to those raised by Airport's petition for a writ of mandate. County's desire to save trees, hawks, or beetles; to minimize costs; or to restrict night operations at the airport does not alter its duty to follow the law. If, as County fears, its duty to trim or remove trees conflicts with its duty to protect endangered species, then it must seek the appropriate

variance or initiate an appropriate action. The trial court, however, properly found that Airport's variance did not entitle County to obstruct navigable airspace in perpetuity.

## V.   THE AMENDED PERMIT

In a similar vein, County contends Airport's 1990 permit is invalid because the application was not circulated and it did not have the opportunity to object to the commencement of night operations. The trial court politely characterized the issue as a "red herring."

County failed to object at any time during the 12 years of night operations allowed by the corrected permit. As the trial court aptly pointed out, County could have challenged the validity of the permit by filing its own writ petition. It did not. Nor does it provide any authority for its bald assertion that Airport had a duty to circulate the application. Thus, the validity of the permit was not properly raised before the trial court and is of no merit on appeal.

The judgment is affirmed.

Morrison, J., and Hull, J., concurred.