Filed 11/7/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITIZENS FOR AMENDING PROPOSITION L et al., | B283740 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BS150549) |
| v. | |
| CITY OF POMONA, | |
| Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge. Affirmed.

Greenberg Gross, Becky S. James and Jaya C. Gupta for Defendant and Appellant.

Raymond N. Haynes for Plaintiffs and Respondents.

In June 1993, appellant City of Pomona (Pomona) entered into an agreement with non-party Regency Outdoor Advertising, Inc. (Regency).  Pursuant to that agreement, Regency erected advertising billboards alongside several Pomona freeways.  Shortly thereafter, in November 1993, the citizens of Pomona passed a ballot initiative, Proposition L (Prop. L), which prohibited the construction of additional billboards within city limits.

Pomona's agreement with Regency expired by its terms in June 2014. In July 2014, the Pomona city council adopted an ordinance purporting to amend the agreement by extending it for an additional 12-year term.  Plaintiffs/Respondents Citizens for Amending Proposition L (Citizens), Vernon Price, and J. Keith Stephens (collectively, respondents) filed a petition for a writ of mandate and complaint for declaratory relief, alleging that the July 2014 "amendment" was in fact a new agreement for new billboards enacted in violation of Prop. L.  The trial court agreed and granted the petition.  It also awarded respondents attorney's fees pursuant to Code of Civil Procedure section 1021.5.[1]

In this appeal, Pomona challenges these rulings on a variety of grounds.  Procedurally, it argues that plaintiffs lack standing and that Regency is an indispensable party to the litigation.  Substantively, it contends that the trial court erred in concluding that the "amendment" was a new agreement and in finding that Pomona violated a duty to comply with Prop. L.  Pomona also argues that plaintiffs failed to demonstrate an entitlement to attorney's fees.  We affirm the trial court's rulings.  Respondents' motion for sanctions is denied.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

# FACTUAL BACKGROUND

## I.  1993 Agreement

In November 1992, the Pomona city council adopted an ordinance establishing regulations for "off-site outdoor advertising structures," commonly referred to as billboards. That ordinance created limited "eligible display areas" in which new billboards could be constructed. Those areas lay alongside three freeways that passed through the city, state routes 57, 60, and 71. The ordinance also required any advertiser seeking to place billboards in the eligible display areas to enter into a development agreement with the city.

Almost immediately, advertising company Regency negotiated a development agreement with Pomona in accordance with the ordinance. The city council approved the agreement, Development Agreement No. 93-001, by ordinance on May 24, 1993; it took effect 30 days later, on June 24, 1993.

Under the agreement, Pomona granted Regency the right to erect 10 new billboards ("New Structures") on properties Regency owned in the eligible display areas. In exchange, Regency agreed to various conditions, including the removal of 30 existing billboards ("Old Structures") located elsewhere in the city. Regency further agreed to pay Pomona various fees, including one-time development and permitting fees totaling $62,000, a $500 annual business license fee for each new billboard face, and a $250 "posting fee every time a sign face is changed." Regency agreed to remove all of the New Structures "on or before the last day" the agreement was in effect. It also agreed to indemnify Pomona in the event that the validity of the agreement was challenged, though the agreement gave Regency the right to select counsel to do so.

3

By its terms, the agreement was slated to expire "ten (10) years from the earlier to occur of (i) the construction of all of the New Structures, or (ii) twelve (12) months after the Effective Date. . . ." The agreement provided, however, that it was to "be automatically extended for a second ten (10) year term," subject to an increase in the fees Regency was obligated to pay, "unless such term is otherwise terminated, modified or extended by circumstances set forth in this Agreement or by mutual consent of the parties." The parties agree that the first 10-year term ended on June 24, 2004, and that the agreement automatically renewed for a second 10-year term scheduled to expire on June 24, 2014.

## II.     Proposition L

In November 1993, just months after Regency and Pomona entered into their agreement, citizens of Pomona approved Prop. L in a special municipal election. Prop. L, now codified at Pomona Municipal Code section .503-K-K, provides in relevant part: "No new or structurally altered offsite billboards shall be permitted within the City of Pomona. In technical words conveying the same meaning, no 'offsite advertising signs' as defined shall be constructed, relocated, or structurally altered in any zoning district." (Pomona Mun. Code, § .503-K-K.) An editor's note in the municipal code states that Prop. L "cannot be modified without a vote of the people." (*Ibid.*) Thus, beginning in November 1993, no additional billboards could be built in Pomona without voter approval. Under the terms of both Prop. L and the Regency agreement, however, the new law did not apply to the New Structures.

## III.     Efforts to Extend the 1993 Agreement

In 2010, six years into the second 10-year term of the 1993

agreement, Regency approached Pomona with a proposal to extend the agreement for an additional 15 years. City staff prepared a report on the proposal and concluded that it would be possible to extend the agreement notwithstanding Prop. L. Staff reasoned that Prop. L "does not speak to the removal of existing signs, which can remain in tact [*sic*] as long as they are in a 'grandfathered' status . . . or as long as the [1993 agreement] is in effect. . . ." The staff report further noted that, absent some extension of the agreement, "at the end of the effective date, the ten signs will need to be removed by Regency." The report recommended that the city council entertain the proposal.

Pomona followed the recommendation and began negotiating with Regency. At the October 2010 city council meeting, "[d]iscussion ensued regarding the locations of billboards in the City, types of digital signs, light emissions, and the possibility of negotiating the removal of the three additional signs." No resolution was reached, however, and the matter was continued.

In advance of the city council meeting scheduled for January 2011, plaintiff Stephens sent a letter opposing the proposal to Pomona's mayor and city council. In the letter, which he signed in his capacity as president of billboard company Valley Outdoor, Inc., Stephens opined that the proposed agreement extension, particularly Regency's request to digitize certain New Structures, "violates both the intent and the spirit" of Prop. L. He further asserted that Pomona could receive "significant revenue beyond the proposed $1,000,000" by negotiating for different terms or with his company. In a second letter, sent in February 2011, Stephens reiterated his concerns about compliance with Prop. L and explicitly invited the city council "to

5

negotiate a revenue sharing development agreement with Valley Outdoor."

In March 2011, a representative of Regency sent a letter to Pomona asking the city council to delay further action "for the basic reason that Regency . . . and the city have not yet reached a final consensus on the terms of the agreement." The city council appears to have heeded this request; at any rate, the appellate record does not pick up again until June 2012, when the city council began the process of issuing public notice for a July 2, 2012 discussion about extending the agreement.

Pomona continued to negotiate extending the 1993 agreement with Regency through early 2014. During the ongoing negotiations, Regency withdrew its request to digitize some of the billboards and proposed agreement extensions with varying durations and revisions. City staff reports prepared during these negotiations reflect an understanding that the billboards governed by the 1993 agreement would have to be removed "in June, 2014 when the term expires" if the agreement was not extended.

Eventually, in February 2014, Pomona and Regency tentatively agreed to extend their 1993 agreement for 12 years, with a one-time payment of $1,000,000 by Regency. A first reading of an ordinance to approve the agreement extension was placed on the June 2, 2014 city council agenda. Plaintiff Stephens appeared at the meeting to oppose the extension. A representative of the Alameda Corridor-East Construction Authority also appeared to oppose the extension; some of the billboards Regency had erected under the agreement were "in direct conflict" with the agency's ongoing, $1 billion railroad expansion project. The city council voted "to open and continue

6

the Public Hearing to the Regular City Council meeting to be held on June 16, 2014."

Between June 2 and June 16, 2014, Regency worked to revise the extension proposal to accommodate the railroad project.  Under the terms of the revised proposal—which expressly recognized that "the original termination date of the Development Agreement is June 24, 2014"—Regency agreed to relocate one interfering billboard and remove another, and the City agreed to process the permits and approvals for the relocation expeditiously and in good faith.  The revised proposal also included a revised indemnity provision. Under the revised provision, Regency still had the obligation to indemnify and defend Pomona, but Pomona had the right "to approve . . . the legal counsel providing the City's defense" and Regency agreed to "not object to the City Attorney's Office serving as counsel for the City."

At its June 16, 2014 meeting, the city council introduced for first reading Ordinance No. 4190, "an Ordinance approving amendment number three to Development Agreement No. 93-001 between the City of Pomona and Regency Outdoor Advertising Inc., extending the agreement twelve years and paying the City of Pomona $1,000,000."  The annotated agenda for the meeting states that the city council "approved" the ordinance.

On June 24, 2014, the second 10-year term of the agreement ended. Regency did not remove any of the billboards it had placed pursuant to the agreement.

Almost two weeks later, on July 7, 2014, the city council introduced Ordinance No. 4190 for second reading and adoption. Stephens attended the meeting to oppose the ordinance; Regency's counsel attended to support it.  After hearing their

7

comments and discussing the matter, the city council unanimously voted in favor of Ordinance No. 4190. The annotated agenda for the meeting reflects that the council "adopted, at second reading, Ordinance 4190 approving the third amendment to Development Agreement No. 93-001 between the City of Pomona and Regency Outdoor Advertising, Inc., extending the term of the agreement by twelve years and paying the City of Pomona $1,000,000."

**PROCEDURAL HISTORY**

### I.    Petition

Plaintiffs filed a verified petition for writ of mandate and complaint for declaratory relief against Pomona—but not Regency—on August 13, 2014. Plaintiffs described themselves as follows. "Petitioner and Plaintiff Citizens for Amending Proposition L is an unincorporated association of residents of the City of Pomona formed for the purpose of protecting the citizen based initiative enacted in the City of Pomona in November, 1993 known as Proposition L and to amend Proposition L in the only manner in which it can be amended, that is, through a vote of the people of Pomona." "Vernon Price is an individual residing in the City of Pomona, and the Chairman of the Citizens for Amending Proposition L." "J. Keith Stephens is an individual actively involved in the billboard business in Pomona since 1987, an opponent of Proposition L in 1992, an advocate for the 1993 Development Agreement as described in this petition and complaint [the Regency agreement], but a competitor of Regency Outdoor Advertising today. Stephens would be adversely affected by the enactment of the development agreement described later in this petition."

In their first cause of action, for an alternative and peremptory writ of mandate, plaintiffs alleged that Pomona's adoption of Ordinance No. 4190 "exceeded the power of the City of Pomona, and constituted an abuse of discretion." They alleged that the 1993 agreement "expired on June 24, 2014, and required the removal of the billboards allowed under that agreement on or before that date. By not requiring the removal of the billboards, making any signs that remain 'new' signs, that is, signs that would have otherwise not been allowed (*sic*). The City has violated the terms of Proposition L by allowing the 'new signs' to be placed."[2] Plaintiffs asserted that Pomona "had the duty to act in accordance with State and local laws governing the adoption of Ordinance 4190 and the extension/amendment to Development Agreement 93-001, including the California Environmental Quality Act, . . . and Proposition L, and Plaintiffs have a beneficial interest in the [*sic*] enforcing these provisions as concerned citizens of the City of Pomona, and active participants in the adoption of Proposition L in the City of Pomona."

In their second cause of action, for declaratory relief, plaintiffs sought "a judicial declaration of the rights and obligations of the parties, specifically a declaration that

_____

[2] Plaintiffs also alleged that Pomona failed to comply with the requirements of the California Environmental Quality Act (CEQA) "in that it failed to study: (1) the environmental impact of extending/amending a development agreement originally contemplated by the parties to be in effect for 20 years; and (2) the environmental impact of the placement of new billboards on locations not originally studied with the adoption of the original development agreement in 1993." The trial court did not address plaintiffs' CEQA claim on the merits, and the parties do not address the CEQA claim in their briefing.

9

Ordinance 4190 and the extension/amendment of Development Agreement 93-001 is and/or was illegal, and that any action taken pursuant to that agreement is null and void." Plaintiffs requested attorney's fees "pursuant to the private attorney general provisions of state law for protecting the public and the initiative process."

## II. Demurrer and Motion to Strike

Pomona filed a demurrer and a motion to strike. In its demurrer, Pomona argued that the action should be dismissed because plaintiffs failed to join Regency, which it asserted was an indispensable party under section 389, subdivision (b). In its motion to strike, Pomona sought to strike numerous allegations of the pleading on the grounds that they were directly contradicted by attached exhibits, judicially noticeable documents, and applicable governing law. It specifically argued that the Prop. L allegations should be stricken because Prop. L was not applicable to the agreement, which was enacted before its passage.

The trial court overruled the demurrer, concluding that Regency was not an indispensable party to the action. The trial court also largely denied the motion to strike, granting it only as to two paragraphs relating to an alleged lack of public notice and exhaustion of administrative remedies. The court granted plaintiffs leave to amend, but they did not do so. The proceedings were stayed for the next year and a half by agreement of the parties.

## III. Ruling

When the stay was lifted, the parties filed memoranda of points and authorities addressing the merits of the petition. In the caption on the cover of their supporting memorandum,

10

plaintiffs identified themselves as "Pomona Residents to Fix the Budget Without a Tax Increase" and "J. Keith Stephens"; they did not mention plaintiffs Price or Citizens. In its opposition, Pomona argued that the change of parties was improper, negated the verification of the petition, and demonstrated a lack of standing. Pomona also argued that the petition must be denied for failure to name Regency, an indispensable party, and that it failed on the merits because Pomona had discretion to extend the 1993 agreement. In reply, plaintiffs disputed Pomona's merits arguments and asserted that the change in parties listed in the caption had been a mistake.

The trial court held a hearing on April 7, 2017 and granted the petition. The trial court accepted plaintiffs' representation that the caption change had been in error and concluded that Citizens and Price had public interest standing as residents of Pomona.[3] The trial court further concluded that Regency, though a necessary party under section 389, subdivision (a), was not an indispensable party under subdivision (b) such that the case could not proceed in its absence. On the merits, the trial court rejected Pomona's contention that Prop. L was inapplicable to the July 7, 2014 agreement extension. It concluded that the 1993 agreement expired on June 24, 2014, such that the putative "extension" was "in fact a new agreement between the City and Regency supported by new consideration and containing new terms." The court reasoned, "Because the City did not adopt the Third Amendment until after the Agreement had expired, the Third Amendment was a new agreement subject to the rules, regulations, and official policies in force at the time of its

---

[3]The court did not address Stephens's standing or lack thereof.

11

execution (July 7, 2014), including Proposition L. By adopting the Third Amendment, the City violated its duty to abide by Proposition L[,] which prohibits any new or structurally altered offsite billboards within the City of Pomona." The court accordingly granted the petition and directed Pomona to set aside Ordinance No. 4190. The court entered judgment on May 10, 2017, and notice of entry of judgment was filed on May 11, 2017.

## IV.    Attorney's Fees

After the trial court granted the petition, plaintiffs moved for attorney's fees under section 1021.5. They asked for a lodestar of $189,900, representing 379.8 hours of work at a rate of $500 per hour. They also requested that the lodestar be multiplied by three, for a total fee award of $569,700, citing the complexity of the case, their complete victory, and other factors. Pomona opposed the motion, arguing that plaintiffs did not satisfy the statutory requirements for fees under section 1021.5, that the time expenditures and requested fees were excessive, and that a multiplier was unwarranted.

The trial court found that plaintiffs met the statutory criteria of section 1021.5 and granted the motion for fees. It determined that both the billing rate and number of hours billed were excessive, however, and reduced the hourly fee to $300 and the total compensable hours to 250.67. The resultant lodestar was $75,200.40. The court found "no basis for enhancing the fees with a multiplier" and therefore awarded plaintiffs a total of $75,200.40 in attorney's fees. It entered the order on June 16, 2017.

## V.    Appeal and Motion for Sanctions

Pomona filed a timely notice of appeal on July 7, 2017, challenging both the judgment and the award of attorney's fees.

12

After the matter was fully briefed, plaintiffs filed a motion for sanctions pursuant to section 907 and California Rules of Court, rule 8.276(a)(1).  Plaintiffs alleged that "the only purpose of this appeal was to delay the effect of the writ of mandate" and sought sanctions in the "minimum" amount of "$200,000.00 as a one month estimate of the revenue" Regency earned while operating its billboards.

## DISCUSSION

### I.  Standing

Pomona contends that none of the three plaintiffs—Price, Stephens, and Citizens—had standing to bring this mandamus action.  It argues that all three plaintiffs lack the beneficial interest in the litigation necessary to support a writ of mandamus.  It further argues that none of them qualifies for the "public interest" exception to the beneficial interest requirement, because "they seek to further their own competitive interests, not the public interest."  We disagree.  The trial court appropriately concluded that plaintiffs Price and Citizens had public interest standing to pursue this action.

#### A.  Legal Principles

A writ of mandate under section 1085 is a vehicle to compel a public entity to perform a legal duty, typically one that is ministerial.  (*Weiss v. City of Los Angeles* (2016) 2 Cal.App.5th 194, 204.)  Under section 1085, the trial court reviews an administrative action to determine whether an agency's action "'was arbitrary, capricious, or entirely lacking in evidentiary support, contrary to established public policy, unlawful [or] procedurally unfair. . . . [Citations.]  "Although mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct

13

abuses of discretion. [Citation.]'" [Citation.]" (*Ibid.*)

"As a general rule, a party must be 'beneficially interested' to seek a writ of mandate. (Code Civ. Proc., § 1086.) 'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. [Citations.] . . .' The beneficial interest must be direct and substantial." (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 (*Save the Plastic Bag*).) This standard "is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."' [Citation.]" (*Associated Builders and Contractors, Inc. v. San Francisco Airports Commission* (1999) 21 Cal.4th 352, 362.)

"Nevertheless, '"where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced."' [Citation.] This '"public right/public duty" exception to the requirement of a beneficial interest for a writ of mandate' 'promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' [Citations.] We refer to this variety of standing as 'public interest standing.' [Citation.]" (*Save the Plastic Bag, supra,* 52 Cal.4th at

14

p. 166.)  It is also known as "'citizen standing.'"  (See, e.g., *Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 913.)

"[T]he interest of a citizen may be considered sufficient when the public duty is sharp and the public need weighty." (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1237, disapproved on other grounds by *Save the Plastic Bag*, *supra*, 52 Cal.4th at pp. 169-170 (*Waste Management*).)  "[T]he courts balance the applicant's need for relief (i.e., his beneficial interest) against the public need for enforcement of the official duty.  When the duty is sharp and the public need weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater personal interest than that of a citizen who wants the law enforced." (*McDonald v. Stockton Metropolitan Transit District* (1973) 36 Cal.App.3d 436, 440.)  Determining whether the exception is warranted thus "involves a 'judicial balancing of interests.' [Citation.]" (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1058 (*SJJC*).)  The balancing is done on a sliding scale: "When the public need is less pointed, the courts hold the petitioner to a sharper showing of personal need." (*McDonald v. Stockton Metropolitan Transit District*, *supra*, 36 Cal.App.3d at p. 440.)  The trial court also may find public interest standing outweighed by "competing considerations of a more urgent nature." (*Green v. Obledo* (1981) 29 Cal.3d 126, 145; see also *Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 874-875.)  A petitioner is not entitled to pursue a mandamus petition under the public interest exception as a matter of right.  (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 170 & fn. 5.)

15

Standing is a question of law that we review de novo. (*San Luis Rey Racing, Inc. v. California Horse Racing Board* (2017) 15 Cal.App.5th 67, 74.) We review any factual findings underlying a trial court's ruling on standing for substantial evidence. (*Ibid.*) However, the determination whether to apply the public interest exception involves a judicial balancing of interests and is reviewed for abuse of discretion. (*Reynolds v. City of Calistoga, supra*, 223 Cal.App.4th at pp. 874-875.)

**B.    Analysis**

The trial court found that plaintiffs Price and Citizens were residents of Pomona and had public interest standing "to ensure that the City does not permit the construction of billboards in violation of Proposition L." Pomona argues that the trial court's application of the public interest standing exception implies that it found plaintiffs lacked a beneficial interest in a writ of mandamus. We agree.

There would be no need for the trial court to consider the public interest exception if plaintiffs demonstrated a beneficial interest. Nothing in the record suggests they made such a showing, despite their unsupported assertion that they have a beneficial interest in "making sure Appellant complies with its laws." A beneficial interest is present only when a plaintiff "'has some special interest to be served or protected over and above the interest held in common with the public at large.'" (*Save the Plastic Bag, supra*, 52 Cal.4th at p. 165.) There is no evidence that Citizens, Price, or Stephens experienced any actual, imminent, or particularized invasion of a legally protected interest as a result of Pomona's adoption of Ordinance No. 4190. A desire to ensure that a city complies with its laws does not alone give rise to a beneficial interest.

16

Yet it may give rise to public interest standing, as the court concluded it did here for Price and Citizens. Pomona contends that conclusion was erroneous for two reasons.

First, Pomona argues that all three plaintiffs lack public interest standing because they sought mandamus to advance their own competitive objectives rather than to promote or safeguard the public welfare. Pomona contends plaintiffs "failed to demonstrate that the public has any interest in preventing the City from extending a development agreement that is authorized by state law and provides significant revenues to the City," and that even if they had, their "interest is not in removing billboards, but in removing *Regency*'s billboards and promoting their own." Pomona relies primarily on *Waste Management*, *supra*, 79 Cal.App.4th 1223 and *SJJC*, *supra*, 12 Cal.App.5th 1043. Neither case demonstrates that the trial court abused its discretion in concluding public interest standing supported the action here.

In *Waste Management*, two competing landfills were located in the same county but were under the jurisdiction of two different regional water boards. (*Waste Management*, *supra*, 79 Cal.App.4th at p. 1230.) When Waste Management sought to accept certain designated wastes at its landfill, the water board overseeing it required Waste Management to undergo a "classification upgrade," and the county required Waste Management to conduct a CEQA review. (*Id.* at p. 1231.) When Waste Management's competitor later sought to accept the same type of waste, its water board did not require it to reclassify; the county accordingly did not require the competitor to perform a CEQA review. (*Id.* at p. 1231.) Waste Management took issue with the fact that it had to perform a CEQA review while its

17

competitor did not; it alleged the disparity "would create an unlevel playing field" and wrote a letter to the county demanding that the county mandate CEQA review for the competitor. (*Ibid.*) The county ultimately filed a notice of CEQA exemption for the competitor. (*Ibid.*)

Waste Management sought a writ of mandate. The trial court issued the writ, but the court of appeal reversed on standing grounds. (*Waste Management*, *supra*, 79 Cal.App.4th at 1241.) As relevant here, the court of appeal held that Waste Management lacked public interest standing primarily because it was "pursuing its own economic and competitive interests" rather than "interest in or commitment to the environmental concerns which are the essence of CEQA." (*Id.* at p. 1238.) The court of appeal additionally noted that Waste Management had "not pointed to any beneficially interested persons whom it purports to represent," nor had it "demonstrated that persons who may be beneficially interested in the matter would find it difficult or impossible to vindicate their own interests." (*Id.* at pp. 1238-1239.)[4]

In *SJJC*, an unsuccessful bidder for an airport expansion project sought a writ of mandate when the city awarded the project to a competitor. (See *SJJC*, *supra*, 12 Cal.App.5th at pp. 1047-1049.) It alleged that the award violated CEQA and that the proposal assessment process had been unfair. (*Id.* at p. 1050.) Like Waste Management, SJJC primarily argued that the city

_____

[4] *Waste Management* also held that a "nonhuman entity" should be held to a higher standard than a natural person when seeking to assert public interest standing. (*Waste Management*, *supra*, 79 Cal.App.4th at p. 1238.) The Supreme Court disapproved this holding. (*Save the Plastic Bag*, *supra*, 52 Cal.4th at pp. 169-170.)

gave its competitor an unfair advantage. (See *ibid*.) The trial court sustained the city's demurrer, and the court of appeal affirmed on standing grounds. (*Id*. at p. 1053.) The court of appeal rejected SJJC's assertion of public interest standing. It explained, "where the claim of 'citizen' or 'public interest' standing is driven by personal objectives rather than 'broader public concerns," a court may find the litigant to lack such standing." (*Id*. at p. 1057, quoting *Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 169.) Such a finding was proper in *SJJC* because "SJJC contends that as a potential competitor at the airport it should know what the public should want. It does not demonstrate how the City Council erred in determining that [its competitor's proposal] would be in the public interest." (*Id*. at p. 1058.) Moreover, the court of appeal continued, SJJC failed to identify any statutory violations indicating that the city violated its duty to conduct a fair procurement process or any violations of the city's own municipal laws or charter. (*Id*. at pp. 1058-1059.)

Here, Pomona speculates that Price and Citizens are exclusively advancing a commercial interest. Yet Price is identified in the record as an individual residing in Pomona and chairperson of Citizens. Citizens is identified as "an unincorporated association of residents of the City of Pomona formed for the purpose of protecting" Proposition L. The record does not reveal that either of them was a competitor of Regency or was directly affiliated with Stephens, who plainly was acting to advance the interests of his own billboard company. Even if it did, neutrality is not "a necessary prerequisite for public interest standing." (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 169.) "[I]ndeed, truly neutral parties are unlikely to bring citizen suits." (*Ibid*.) Instead, a personal objective is one factor the court

19

may consider when weighing the propriety of public interest standing.  (See *SJJC*, *supra*, 12 Cal.App.5th at p. 1057.)  Unlike the plaintiff in *SJJC*, plaintiffs here alleged that the city violated its own municipal law.  Compliance with the law, particularly one enacted by voter initiative in response to the initial formation of the contract allowing billboards into the city, is in our view a "sharp" public duty.  The public need for enforcement of the law also is weighty; the record suggests that, absent Stephens's 2011 intervention in the negotiations, digital billboards might have been installed without broad public awareness of any potential issue.  "When the duty is sharp and the public need weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater personal interest than that of a citizen who wants the law enforced."  (*McDonald v. Stockton Metropolitan Transit District*, *supra*, 36 Cal.App.3d at p. 440.)  That is what happened here.

Pomona also contends that the trial court erred in finding that Citizens had public interest standing because "there is no evidence that this association has any members other than Price and . . . there is no record of its advocacy or even its existence apart from this lawsuit."  It further asserts that "[i]t is telling" that Citizens's name was replaced on a filing by the name of another organization.  Pomona relies solely on *San Francisco Apartment Association v. City and County of San Francisco* (2016) 3 Cal.App.5th 463, 472, for the proposition that an association's standing is derivative of its members' standing and is subject to the same challenges.  That case indeed states that an association has standing to bring suit on behalf of its members when (1) its members otherwise would have standing to sue in their own right; (2) the interests it seeks to protect are pertinent

20

to the association's purpose; and (3) neither the claim asserted nor the relief requested requires participation of the association's individual members. (*Ibid.*) Those principles do not help here. Price, the sole identified member of Citizens, has public interest standing to sue, as may other Pomona citizens involved in the organization. One of Citizens's asserted purposes is to protect Prop. L, and neither the claim—that Pomona violated Prop. L—nor the relief requested—that Pomona comply with Prop. L—requires any members of Citizens to participate in the suit.

The trial court did not err in concluding that plaintiffs Price and Citizens had public interest standing to sue.

## II.    Indispensable Party

Pomona next contends that the trial court abused its discretion by holding that Regency was not an indispensable party to the litigation. Pomona argues that the trial court abused its discretion both by failing to consider all of the statutory factors listed in section 389, subdivision (b) and by finding that Pomona would adequately represent Regency's interests. We disagree.

### A.    Legal Principles

Section 389 governs the joinder of parties to litigation. It provides:

"(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons

21

already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable.  The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or by other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."  (§ 389, subds. (a) & (b).)

Subdivision (a) of section 389 defines "necessary parties" as those persons who "ought to be joined if possible."  (*County of San Joaquin v. State Water Resources Control Board* (1997) 54 Cal.App.4th 1144, 1149.)  The trial court must determine that a party is necessary under subdivision (a) before assessing whether the party is indispensable under subdivision (b).  (*Deltakeeper v. Oakdale Irrigation District* (2001) 94 Cal.App.4th 1092, 1100 (*Deltakeeper*).)  "Then, subdivision (b) sets forth the factors to follow if such a person cannot be made a party in order to determine 'whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus

22

regarded as *indispensable*.' (Italics added.) The subdivision (b) factors 'are not arranged in a hierarchical order, and no factor is determinative or necessarily more important than another.' [Citation.]" (*San Joaquin*, *supra*, 54 Cal.App.4th at p. 1149.) The trial court's assessment of indispensability and consideration of these factors "'involve the balancing of competing interests and must be steeped in "pragmatic considerations."' [Citation.]" (*Id.* at p. 1152.)

We review the trial court's determination that a party is or is not indispensable for abuse of discretion. (*San Joaquin*, *supra*, 54 Cal.App.4th at pp. 1151-1153; *Kaczorowski v. Mendocino County Board of Supervisors* (2001) 88 Cal.App.4th 564, 568.)

### B. Ruling

The trial court initially addressed Regency's indispensability at the demurrer stage of the litigation. There, it concluded that Regency was a necessary party under Public Resources Code section 21167.6.5, subdivision (a), due to plaintiffs' CEQA claim.[5] The trial court did not revisit its ruling that Regency was a necessary party, and the parties do not dispute the finding.

The trial court also identified each of the four section 389, subdivision (b) factors and discussed them at length in its demurrer ruling. As to the first factor, prejudice, the trial court concluded Regency would not be prejudiced "because its interests will be adequately protected by the City pursuant to the

---

[5]Although neither side substantively addresses the CEQA claim in this appeal, Pomona advocates in favor of the trial court's conclusion that Regency is a necessary party under CEQA. It does not argue that Regency is necessary on any other basis.

Development Agreement," which the court noted "requires the City and Regency to 'cooperate with each other in the preparation and defense of any action.'" The trial court found this analogous to an agreement in *Deltakeeper*, *supra*, 94 Cal.App.4th at p. 1103, which gave nonjoined entities a right to participate in and control the litigation. The court also reasoned that both Regency and Pomona had a financial interest in the agreement: "[t]he financial stake the City has in the Amendment, for which Regency is obligated to pay $1 million, also places the City in a position to argue vigorously in favor of its validity. This protects Regency's interests in this litigation."

As to the second factor, "[w]hether there are measures by which any prejudice to the unjoined party can be lessened or avoided," the trial court asked what contribution Regency could make if joined to the proceedings. It concluded that Regency's contribution would be minimal: "[t]he fact that both the City and Regency are bound by a collective litigation decision-making process indicates that their defenses to the litigation will be the same." The court further found that Regency and Pomona "have identical interests in enforcing the Amendment, to which they are both parties," and share "significant financial interests." The court accordingly concluded that the second factor, like the first, weighed against deeming Regency an indispensable party.

As to the third factor, adequacy of the judgment in the absence of the nonjoined party, the trial court focused on whether complete relief could be afforded to the participating parties in Regency's absence. As part of that query, the trial court considered whether any judgment would be subject to collateral attack by Regency. The trial court found that it would not be, because a ruling that the amended agreement was unenforceable

24

would render any action to enforce it legally impossible. "If the Amendment is found to exceed the City's authority and violate Proposition L and/or the Planning Law, any attempt by Regency to force the City to meet its obligations under the Amendment would be met with the defense of legal impossibility. [Citation.] Therefore, any judgment rendered in this action would be adequate as to the parties currently before the Court."

The trial court concluded that the fourth factor, whether plaintiffs would have an adequate remedy if their action were dismissed for failure to join Regency, also cut in favor of plaintiffs. The court concluded that plaintiffs, like the plaintiffs in *Deltakeeper*, *supra*, 94 Cal.App.4th at p. 1108, would have no recourse, because the statute of limitations for adding more parties had passed. The trial court also noted Pomona's acknowledgment "that [Plaintiffs] have no other remedy at law."

After finding that all four factors pointed to the conclusion that Regency was not indispensable, the court ruled that Regency was not an indispensable party and allowed the suit to move forward. Pomona raised the issue of indispensability a second time in advance of the merits hearing, reasserting its previous arguments and adding that a decision published after the ruling on the demurrer, *Simonelli v. City of Carmel-by-the-Sea* (2015) 240 Cal.App.4th 480 *(Simonelli)*, was "directly on point and establishes that Regency is both a necessary and indispensable party."

The trial court indicated that it was not inclined to reconsider its earlier ruling. It distinguished *Simonelli, supra,* on the basis that the agreement between Regency and Pomona "gives Regency the ability to control defense of any litigation." The trial court pointed to the indemnity language from the 1993

25

agreement, not the July 2014 amendment: "'[i]n the event of any legal action instituted by a third party . . . challenging the validity of any provision of this Agreement, Developer [Regency] and the City shall cooperate in defending any such action.' . . . 'Developer shall defend City . . . from any legal actions . . . challenging the validity of any provision of this Agreement' and 'shall be entitled to select counsel to conduct such defense, who shall be authorized to represent City as well as Developer. . . .'" The trial court reasoned, "[b]y requiring Regency to defend the City, the Agreement ensures that Regency's interests will be protected regardless of whether Regency is made a party to the action. Moreover, in this case, the City's and Regency's interests are aligned because the City has an interest in ensuring that its million dollar contract with Regency is not set aside."

### C. Analysis

Pomona first contends the trial court abused its discretion by failing to consider all factors supporting a finding of indispensability. It asserts, "the trial court gave no indication it considered all the Subsection [*sic*] (b) Factors and balanced these factors as required." Pomona suggests that the trial court considered only the third factor. These contentions are not supported by the record.

As outlined above, the trial court identified and discussed all four factors set forth in section 389, subdivision (b) when it overruled Pomona's demurrer. In its subsequent ruling, the trial restated the section 389, subdivision (b) factors and expressly referred back to its previous ruling—"The Court previously overruled Respondent's demurrer on this ground[,] finding that Regency is not an indispensable party to this action. (See March 18, 2015 Minute Order.)" The court's enumeration of the

26

statutory factors and its explicit reference to its earlier analysis of them is an indication that it was aware of and considered the appropriate factors. The court was well within its discretion to reiterate rather than reproduce its prior analysis.

Pomona next contends the trial court abused its discretion by finding that Regency's interests would be adequately protected. Specifically, it argues that the trial court erroneously relied on the indemnity provision from the original development agreement rather than the amended one, and that in any event *Simonelli*, *supra*, 240 Cal.App.4th 480 holds that an indemnity provision "is not a sufficient basis to conclude that the party named in the litigation will adequate [*sic*] represent the interests of the absent party."

We agree with Pomona that the applicable indemnity provision was that contained in the July 7, 2014 version of the agreement. Whether the agreement was amended (as Pomona argues) or was a new agreement (as plaintiffs argue and the trial court ruled), the indemnity provision it contained was the operative one between Pomona and Regency. Indeed, it expressly "replaced in its entirety" the indemnity provision from the original agreement on which the trial court relied, and applies to attempts, like that of plaintiffs, to "modify, set aside, void, or annul" the amended agreement. We note, however, that Pomona did little to alert the court, either in its briefing or in open court, that the applicable provision was that contained in the July 7, 2014 agreement.

The updated provision, entitled "Cooperation in the Event of Legal Challenge and Indemnity," states:

"Developer shall indemnify, protect, defend, and hold harmless the City . . . from any and all claims, demands, law

27

suits [*sic*], writs of mandamus, and other actions and proceedings (whether legal, equitable, declaratory, administrative or adjudicatory in nature), and alternative dispute resolution procedures (including, but not limited to, arbitrations, mediations, and other such procedures), (collectively, 'Actions'), brought against the City . . ., that seek to modify, set aside, void, or annul, the Development Agreement and this Third Amendment, whether such Actions are brought under the California Environmental Quality Act, the Planning and Zoning Law, the Subdivisions Map Act, Code of Civil Procedure Section 1085 or 1094.5, or any other state, federal, or local statute, law, ordinance, rule, regulation, or any decision of a court of competent jurisdiction. It is expressly agreed that the City shall have the right to approve, which approval will not be unreasonably withheld, the legal counsel providing the City's defense, and that Developer shall reimburse City for any reasonable costs and expenses directly and necessarily incurred by the City in the course of the defense. Developer will not object to the City Attorney's Office serving as counsel for the City.

"City shall notify Developer of any Action within ten (10) business days of receipt of an Action. Failure of the City to promptly notify Developer of an Action shall, at the election of Developer, terminate any obligation for Developer to indemnify the City.

"City and Developer agree that they, and any legal counsel hired by them, will cooperate with each other in the preparation and defense of any Action. This includes, but is not limited to, cooperation in the preparation of the administrative record and consultation with one another in good faith in the preparation of court filings to ensure that unnecessary and duplicative costs are

28

not incurred in the defense of any Action.  City shall have the right to review and approve all court filings filed on its behalf.  City and Developer agree that each will be advised by their respective counsel independently of the other party.

"City shall not enter into any settlement or resolution of the Action without first obtaining written approval of such settlement or resolution by Developer.  Developer shall not enter into any settlement or resolution of any Action without first consulting with the City. City shall not reject any reasonable settlement; if City does reject a settlement that is acceptable to Developer, Developer may settle the action, as it relates to Developer, and City shall thereafter defend such action (including appeals) at its own cost."

Pomona argues that this provision is not sufficient to support the trial court's conclusion that its interests were aligned with Regency's.  It relies on *Simonelli*, *supra*, 240 Cal.App.4th 480, which the trial court distinguished.

In *Simonelli*, a petitioner proceeding in pro. per. sought a writ of mandamus against Carmel-by-the-Sea after the city approved a development application for a vacant lot abutting her property. She did not name the developer as a party.  (*Simonelli*, *supra*, 240 Cal.App.4th at p. 482.)  The trial court sustained the city's demurrer without leave to amend on the ground that the developer was an indispensable party that could not be joined due to the statute of limitations.  (*Ibid.*)  The petitioner appealed, and the appellate court affirmed the trial court's ruling that the developer was an indispensable party.  (*Id.* at p. 482.)

As is relevant here, the petitioner argued that the developer was not a necessary or indispensable party because the developer was required, "as a condition of approval of its permit[,]

29

to fund the City's defense against her petition." (*Simonelli*, *supra*, 240 Cal.App.4th at p. 484.) The indemnity provision at issue stated: "'The applicant agrees, at its sole expense, to defend, indemnify, and hold harmless the City . . . from any liability; and shall reimburse the City for any expense incurred, resulting from, or in connection with any project approvals. . . . The City shall promptly notify the applicant of any legal proceedings, and shall cooperate fully in the defense.'" (*Ibid.*) This provision formed the entire basis of the petitioner's argument as to why the developer was not an indispensable party.

The appellate court rejected her argument. It concluded that the provision did not ensure that the City would protect the developer's interests because it "does not give [the developer] the power to control the City's defense of Simonelli's action." (*Ibid.*) The court further found that the city "has not ceded control of the litigation" and therefore "could decide not to defend against Simonelli's action or to conduct the litigation in such a manner as to be adverse to [the developer's] interest." (*Id.* at pp. 484-485.) The appellate court relied on this reasoning to conclude that the developer was both a necessary and indispensable party to the litigation, because it otherwise would be unable to protect its interests.

Pomona asserts the same rationale should apply here. It argues, "*Simonelli* establishes that an obligation to defend another in litigation does not permit a finding that that person will adequately represent the payor's interest in [the] litigation. [Citation.] Just as the *Simonelli* court recognized that the city could 'conduct the litigation in such a manner as to be adverse to [the developer's] interest,' the City's counsel here could choose to

30

represent its interests to the detriment of Regency's." A leading treatise has interpreted *Simonelli* the same way, citing the case for the proposition that "[t]he mere fact that the nonjoined party is required to defend and indemnify the joined party is not enough to establish adequacy of representation if the nonjoined party does not have the power to control the joined party's defense." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group June 2018 Update) ¶ 2:156, p.2-65.)

The indemnity provision here gives the nonjoined party, Regency, more control over the litigation than the provision in *Simonelli*; unlike the developer there, Regency is entitled to play a role in selecting counsel. Pomona argues this is not enough to support a finding that Pomona will protect Regency's interests, especially in light of the clause providing that Pomona and Regency "agree that each will be advised by their respective counsel independently of the other party." We need not decide whether this level of control afforded Regency over the litigation is sufficient to distinguish it from *Simonelli*, because the case is distinguishable on its facts.

In *Simonelli*, the developer sought and received a permit from the city to develop land next to the petitioner's; there is no indication that the city had an independent interest in the project. Courts have recognized that a city can "not be expected to adequately represent the developer's interest in litigation where the city had no special interest in the project." (*Deltakeeper*, *supra*, 94 Cal.App.4th at p. 1104; cf. *Sierra Club, Inc. v. California Coastal Commission* (1979) 95 Cal.App.3d 495, 501 ["if the plaintiff or petitioner prays for the cancellation of a legal right in a certificate, permit or license issued in the name of and

31

being the property of a third person, such party is an indispensable party to the action"].)  Here, however, Pomona has an interest in the validity of an agreement to which it is a party. If the agreement is upheld, it will receive a payment of $1 million.  It was not an abuse of discretion for the trial court to conclude from this interest that Pomona could "be expected vigorously to argue in favor of" upholding the contract. (*Deltakeeper, supra,* at p. 1096.)  Indeed, Pomona has done just that, regardless of the level of control Regency may have exerted or is exerting over the litigation.

Pomona points to authority stating that "a common litigation objective is not enough to establish adequacy of representation by the named parties."  (*County of Imperial v. Superior Court* (2007) 152 Cal.App.4th 13, 38.)  Here, however, the interests of Regency and Pomona are aligned not only legally but also financially.  Moreover, the nonjoined parties in *County of Imperial* "vociferously argue[d] that the disparate interests of [the named parties] prevent the named parties from representing their interests."  (*Ibid.*)  Neither Pomona nor Regency suggests their interests do not align.

Pomona does suggest, however, that the other factors listed in section 389, subdivision (b)—which it maintains the trial court did not address—"support a finding of indispensability."  Pomona "analyzes each factor to present a scenario in which the discretionary factors could be balanced [in its favor], but  . . . has failed to demonstrate why these factors *must* be balanced in this manner."  (*County of Imperial v. Superior Court*, *supra*, 152 Cal.App.4th at p. 35.)  We accordingly are not persuaded. Although Regency's interests undoubtedly will be affected by the outcome of this suit, the trial court did not abuse its discretion by

32

finding that Regency was not indispensable to the litigation. As in *Deltakeeper*, "the rights asserted in this litigation"—compliance with city ordinances when entering contracts—"are independent of the contractual rights . . . established in the Agreement." (*Deltakeeper*, *supra*, 94 Cal.App.4th at p. 1106.) Had Regency been joined, it "would have been limited at trial to the same legal arguments" about whether and to what extent Pomona complied with Prop. L. (*Id.* at p. 1108.)

## III.   Merits

Pomona argues the trial court erred in granting a writ of mandamus for several reasons. First, it contends that "[a]mending a development agreement is a legislative act committed to the City of Pomona's discretion by Government Code §§ 65868 and 65867.5." Therefore, the trial court should "have reviewed the Third Amendment under a highly-deferential, 'arbitrary, capricious, or entirely lacking in evidence' standard afforded to legislative acts and upheld it." Second, it argues that even if Prop. L could impose a mandatory duty on the city, such duty "could only be triggered by the discretionary finding that the billboards at issue are 'new or altered,' a finding the City did not make." Finally, Pomona argues that the trial court "erred based on contract law by disregarding the parties' intent and by interpreting the contract in a way that rendered it unlawful rather than in a way that gave it effect." None of these contentions is persuasive.

### A.   Duty

#### 1.   Legal Principles

"A writ of mandate will lie to 'compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station,' (Code Civ. Proc., § 1085) 'where there is

33

not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.)" (*County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 653 (*Los Angeles*).) "A trial court must determine whether the agency had a ministerial duty capable of direct enforcement or a quasi-legislative duty entitled to a considerable degree of deference." (*Ibid.*) "A ministerial duty is one which is required by statute. 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion, on the other hand, is the power conferred on public functionaries to act officially according to the dictates of their own judgment.' [ Citations.]" (*Id.* at pp. 653-654.)

While mandate lies to compel a public agency to comply with a ministerial duty, it usually does not lie to compel a public agency to exercise its discretion in a particular manner. (*Los Angeles*, *supra*, 214 Cal.App.4th at p. 654.) An action's classification as ministerial or discretionary thus is crucial to the ultimate question whether mandate lies. "'A duty is ministerial when it is the doing of a thing unqualifiedly required. [Citation.]' [Citation.] A public entity has a ministerial duty to comply with its own rules and regulations where they are valid and unambiguous." (*Gregory v. State Board of Control* (1999) 73 Cal.App.4th 584, 595.) In the context of discretionary acts, mandate lies only to correct abuses of discretion. (*Los Angeles*, *supra*, 214 Cal.App.4th at p. 654) "In determining whether a public agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable

minds may disagree as to the wisdom of the agency's action, its determination must be upheld.  [Citation.]  A court must ask whether the public agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices the law requires." (*Ibid.*)

"In reviewing a judgment granting a writ of mandate, we apply the substantial evidence standard of review to the court's factual findings, but independently review its findings on legal issues.  [Citation.]  Interpretation of statutes, including local ordinances and municipal codes, is subject to de novo review." (*City of San Diego v. San Diego Employees' Retirement System* (2010) 186 Cal.App.4th 69, 78.)

## 2.    Analysis

Pomona argues that whether to amend a development agreement is a discretionary decision, and that the trial court therefore erred in finding it abdicated a duty.  Pomona contends the court should have found that it did not act in an arbitrary or capricious fashion, or without evidentiary support, in voting to amend the 1993 agreement.  We disagree.

Pomona is correct that the "letting of contract by a governmental entity necessarily requires an exercise of discretion guided by considerations of the public welfare."  (*Joint Council of Interns & Residents v. Board of Supervisors* (1989) 210 Cal.App.3d 1202, 1211.)  Indeed, Government Code section 65867.5, subdivision (a) provides, "A development agreement is a legislative act that shall be approved by ordinance and is subject to referendum."[6]  Amendments to development agreements are

---

[6] The trial court questioned whether the agreement between Pomona and Regency was a "development agreement[]

35

subject to the provisions of Government Code section 65867.5. (Gov. Code, § 65868.)  Legislative enactments such as these "are presumed to be valid; to overcome this presumption the petitioner must bring forth evidence compelling the conclusion that the ordinance is unreasonable and invalid."  (*County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973.)

The problem for Pomona is that plaintiffs carried that burden here.  They pointed to Prop. L, which unequivocally states that "No new or structurally altered billboards shall be permitted within the City of Pomona."  Plaintiffs also pointed to the original development agreement and its termination date of June 24, 2014.  The agreement provided and Pomona acknowledged on numerous occasions that Regency was supposed to "remove all of the New Structures" on or before that date; the authorized number of billboards that could be placed in the eligible display areas after the agreement expired on June 24, 2014 was zero. Yet the billboards remained, and Pomona adopted Ordinance No. 4190 on July 7, 2014, purporting to authorize their presence.  The Ordinance (and the contract it authorized) thus violated Prop. L, which cannot be modified except by vote of the citizens of Pomona.

The trial court correctly concluded that Pomona violated its duty to comply with Prop. L by entering into a contract that directly violated its terms.  Public agencies have a duty to comply with applicable state statutes and local ordinances.  (See *Rancho Murieta Airport, Inc. v. County of Sacramento* (2006) 142 Cal.App.4th 323, 325-327.)  Pomona abdicated that duty here.

_____

embraced by Government Code sections 65864 et seq.," but did not rule on the question.  We likewise express no opinion on this issue.

Alternatively, Pomona's exercise of its discretion in such a way as to ignore Prop. L constituted an abuse of that discretion that the court properly could have found "arbitrary, capricious, or lacking in evidentiary support."

### B.    New Contract

Pomona argues that the trial court's conclusion that the July 7, 2014 agreement was a new contract rather than an extension or amendment of the 1993 agreement was "incorrect as a matter of contract law."  We reject this argument.

### 1.    Legal Principles

"It is a judicial function to interpret a contract or written document unless the interpretation turns upon the credibility of extrinsic evidence."  (*City of El Cajon v. El Cajon Police Officers' Association* (1996) 49 Cal.App.4th 64, 71.)  We therefore review the trial court's interpretation of the agreement de novo, "exercising our independent judgment as to the meaning of the duration clauses" and other provisions of the agreement.  (*Id.* at p. 70.)  We are guided by well-settled rules of contractual interpretation.

"All contracts, whether public or private, are to be interpreted by the same rules."  (Civ. Code, § 1635.)  One such rule provides that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  (*Id.* § 1636.)  When a contract is written, "the intention of the parties is to be ascertained from the writing alone, if possible."  (*Id.* § 1639.)  "'It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce.'  [Citation.]  Thus, in interpreting the [agreement], we are not concerned as much with what the parties

37

might tell us they meant by the words they used as with how a reasonable person would interpret those words." (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 798.) "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civ. Code, § 1644.)

"Of equal importance is the rule that "'[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643; see also *id.*, § 3541.) Pursuant to this rule, we will not construe a contract in a manner that will render it unlawful if it reasonably can be construed in a manner which will uphold its validity.' [Citation.]" (*Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 798.) A contract is unlawful if it is "[c]ontrary to an express provision of law." (Civ. Code, § 1667.) Unlawful contracts are considered void. (Civ. Code, §§ 1598, 1599.)

### 2. Analysis

The original written agreement between Regency and Pomona demonstrates that the parties intended the agreement to terminate after a period of 20 years, "unless such term is otherwise terminated, modified or extended by circumstances set forth in this Agreement or by mutual consent of the parties." "It is the general rule that when a contract specifies its duration, it terminates on the expiration of such period." (*Beatty Safway Scaffold, Inc. v. Skrable* (1960) 180 Cal.App.2d 650, 654; see also 1 Witkin, Summary of Cal. Law (11th ed. 2018 update) Contracts,

38

§ 954.) A contract that is terminated ceases to bind the parties. A terminated contract cannot be extended or modified; both extension and modification as those terms are commonly understood presuppose the existence of a valid contract to extend or modify. An "extension" is "[t]he continuation of the same contract for a specified period." (Black's Law Dict. (10th ed. 2014) p. 703, col. 1.) A "modification" is "[a] change to something; an alteration or amendment." (*Id.* at p. 1156, col. 2.)

Here, the 1993 agreement terminated by its terms on June 24, 2014. After that point, there was no valid contract to amend, modify, or extend. Pomona contends this conclusion cannot stand because it was contrary to its and Regency's intent. Pomona thus appears to suggest that their intent and conduct stemming therefrom created an implied-in-fact contract. (See Civ. Code, § 1621; *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1178 ["a contract implied in fact 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words'"].) It is possible for a public contract to be implied in fact; "[a]ll contracts, whether public or private, are to be interpreted by the same rules." (Civ. Code, § 1635; see also *M.F. Kemper Construction Co. v. City of Los Angeles* (1951) 37 Cal.2d 696, 704 ["The California cases uniformly refuse to apply special rules of law simply because a governmental body is party to a contract."].) The existence and scope of implied-in-fact contracts are determined by the totality of the circumstances. (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 739.) "The question whether such an implied-in-fact agreement exists is a factual question for the trier of fact unless the undisputed facts can support only one reasonable conclusion.

(*Ibid.*) ”

The undisputed facts here can support only one reasonable conclusion:  that Pomona and Regency did not have an implied-in-fact contract.  Regency recognized, as early as 2010, that any amendment or extension of the 1993 agreement would need to be processed through public channels and reduced to writing.  The record demonstrates that Regency and Pomona recognized throughout their negotiations the need to comply with public notice, publication, and city council procedures.  As the trial court recognized, those procedures include a requirement that ordinances adopting contracts be introduced on a first read and then "not be passed within five days of their introduction, nor at other than a regular meeting or at an adjourned regular meeting."  (Gov. Code, § 36934.)  They also require an express agreement between the parties, negating any notion that Pomona and Regency intended to extend the agreement solely by virtue of their conduct.

Pomona also contends the court erred by interpreting the agreement in such a way as to render it unlawful.  The general rule indeed is that a contract should not be construed in a manner that will render it unlawful, "*if it reasonably can be construed in a manner which will uphold its validity.*" (*Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 798, emphasis added.)  Here, there is no reasonable way to construe the belatedly adopted July 7, 2014 written agreement as an amendment to or extension of the original agreement, which by its terms had terminated.  Pomona did not, as it argues, have "discretion to enter into an extension of the development agreement, regardless of when the second read was completed."  It faced explicit contractual time limits, which

40

elapsed before the city council adopted Ordinance No. 4190.  We find it telling that Pomona does not dispute that a new agreement would violate the provisions of Prop. L; instead, it argues only that the court should have interpreted the agreement as an extension or amendment.  Such an interpretation is not supported by the facts of this case.

**IV.   Attorney's Fees**

The trial court awarded plaintiffs $75,200.40 in attorney's fees under section 1021.5.  Pomona contends the award was improper because the trial court did not consider whether plaintiffs vindicated an important public interest, erred in finding that the litigation conferred a significant benefit on the public, and erred in finding that plaintiffs demonstrated the requisite necessity and financial burden of public enforcement. We affirm.

**A.    Legal Principles**

Section 1021.5 provides, in relevant part, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  (§ 1021.5.)  The statute "codifies the private attorney general doctrine and acts as an incentive to pursue ""public-interest litigation that might otherwise have been too costly to bring."" [Citation.]"  (*Hall v. Department of Motor Vehicles* (2018) 26 Cal.App.5th 182, 188.)  To obtain fees thereunder, the moving

41

party must establish "(1) he or she is a 'successful party,' (2) the action has resulted in the enforcement of an important right affecting the public interest, (3) the action has conferred a significant benefit on the public or a large class of persons, and (4) an attorney fees award is appropriate in light of the necessity and financial burden of private enforcement." (*Ibid.*)

"We review an attorney fee award under section 1021.5 generally for abuse of discretion. Whether the statutory requirements have been satisfied so as to justify a fee award is a question committed to the sound discretion of the trial court, unless the question turns on statutory construction, which we review de novo." (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 152 (*Collins*).)  Under the abuse of discretion standard, we presume the trial court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.  (*Ibid.*)

### B.    Analysis

#### 1.    "Important public interest" and "significant benefit"

Pomona contends that the trial court failed to consider the importance of the public interest plaintiffs "claim to have vindicated by invalidating the Third Amendment."  Quoting *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 938 (*Woodland Hills*), Pomona argues that the trial court was obliged to "realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory."  Pomona similarly argues that the trial court failed to properly evaluate the significance of the benefit to the public of the litigation.  It

contends the court relied on "mere enforcement of a statutory enactment," which *Woodland Hills* "expressly disavowed" as a sufficient basis for awarding fees.

In *Woodland Hills*, the plaintiffs prevailed on a procedural rather than substantive basis and sought attorney's fees under section 1021.5. (See *Woodland Hills*, *supra*, 23 Cal.3d at p. 937.) The defendant argued that fees were unwarranted because ensuring a defendant complies with procedural requirements "does not rise to the level of an 'important right' for purposes of section 1021.5." (*Ibid.*) The Supreme Court rejected that contention, holding that "the fact that a plaintiff is able to win his case on a 'preliminary' issue, thereby obviating the adjudication of a theoretically more 'important' right, should not necessarily foreclose the plaintiff from obtaining attorney fees under a statutory provision." (*Id.* at p. 938.) When a plaintiff prevails on a preliminary issue, the Court instructed, "the trial court, utilizing its traditional equitable discretion (now codified in § 1021.5), must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award. . . ." (*Ibid.*) The Court further held that, because the public always benefits when statutes are enforced, the trial court should "determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Id.* at pp. 939-940.)

Here, the first quotation from *Woodland Hills* is inapposite. Plaintiffs prevailed on the merits of their petition; the trial court did not resolve the matter on a technicality or at a preliminary stage. Moreover, the trial court's order indicates it did consider

43

the importance of the public interest at stake. The trial court cited plaintiffs' papers and noted their argument that "they vindicated the right to have Proposition L enforced. They point out that the citizens of Pomona were seriously concerned about the proliferation of billboards in Pomona and wanted to make sure they had a voice in the approval of any future billboards and that the City Council completely ignored Proposition L." The trial court subsequently stated its conclusion that it "agrees with Plaintiffs that effectuating the voters' right to enforce Proposition L conferred a significant benefit on the general public." This discussion shows that the trial court identified the public interest and evaluated its importance.

It also demonstrates that the trial court appropriately assessed the significance of the benefit. The entire citizenry of Pomona, which passed Prop. L in the wake of the 1993 agreement, benefited from the enforcement of Prop. L. The trial court found persuasive plaintiffs' argument that "'the citizens of Pomona were seriously concerned about the proliferation of billboards in Pomona'" and concluded that ensuring that no additional billboards were erected in the city was a significant benefit to this sizeable class of persons. Pomona has not persuaded us that the trial court erred in finding the benefit gained was significant and widespread.

### 2. "Necessity and financial burden"

"The necessity and financial burden requirement encompasses two issues: ""whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys."' [Citation.]' [Citation.]" (*Collins*, *supra*, 205 Cal.App.4th at p. 154.) "Private enforcement is necessary only if

public enforcement of the 'important right affecting the public interest' (§ 1021.5) at issue is inadequate." (*Ibid.*) The financial burden of private enforcement includes both the costs of litigation and any financial benefits reasonably expected by the successful party. (*Ibid.*) "The appropriate inquiry is whether the financial burden of the plaintiff's legal victor outweighs the plaintiff's personal financial interest. [Citations.] An attorney fee award under section 1021.5 is proper unless the plaintiff's reasonably expected financial benefits exceed by a substantial margin the plaintiff's actual litigation costs." (*Ibid.*)

Pomona contends the trial court "erred in failing to hold [Plaintiffs] to their burden to establish that there was a necessity of private enforcement." It argues that plaintiffs merely "proffered . . . a self-serving statement . . . unsupported by any facts," that the city council ignored Prop. L, which was too "nonspecific and conclusory" to support the award. We disagree. The trial court had not only the assertion of plaintiffs' attorney that Pomona failed to comply with Prop. L, but also an entire administrative record demonstrating the city's awareness that the 1993 agreement was expiring, that the billboards had to be removed by its expiration date, and that Prop. L could bar the alteration or relocation of the billboards covered under the agreement. Indeed, the court stated it was "persuaded that, in this case, there was a necessity of private enforcement because but for this litigation, the City would have renewed the development agreement." The record amply supported this finding.

Pomona also argues that the trial court's finding that plaintiff s incurred a financial burden sufficient to warrant fees "was erroneously predicated on a finding that they did not have a

45

pecuniary interest in the outcome of the litigation." The trial court indeed found that "there is no evidence that [Plaintiffs'] success in this action will cause them to attain any pecuniary benefit or advantage. The evidence presented by Respondents demonstrates, at most, that [Plaintiffs] have a history of litigating similar issues for purposes of harassing competitors." The trial court reasoned that section 1021.5 "focuses, however, on the question whether [Plaintiffs] will achieve a pecuniary advantage from the litigation, not on whether the litigation will impose a burden on the Respondent." Pomona contends this "too narrowly defined what constitutes a financial benefit," and that plaintiffs "created a new bidding opportunity for themselves as they have created pressure on the City to replace the revenue and other benefits that it would have otherwise received through the Third Amendment." In support of this contention, it relies on *Arnold v. California Exposition and State Fair* (2004) 125 Cal.App.4th 498 (*Arnold*). We are not persuaded.

Pomona has not pointed to any evidence in the record showing that Price or Citizens is a competitor of Regency, is in the billboard business, or stands to gain from the cancellation of Regency's contract. Even if Price or Citizens did compete with Regency, they too would be subject to the strictures of Prop. L and thus unable to financially benefit from the enforcement of the provision. [7] This is in contrast to *Arnold*, in which the plaintiff, who previously operated a harness racing operation at the California Exposition, successfully sued to vacate agreements

---

[7]Pomona asserts, accurately, that plaintiffs were working to pass a ballot initiative amending Prop. L to expand the eligible display zones and allow the construction of new billboards. This is of no moment, as their efforts were unsuccessful.

California Exposition had entered with one of his competitors. (See *Arnold, supra,* 125 Cal.App.4th at p. 511.) The court found that it was "no stretch to say the record shows Arnold was chomping at the bit to again run the Cal Expo harness racing operation. On several occasions over a significant period of time, he informed Cal Expo that he would provide it with hundreds of thousands of additional revenue dollars if he were awarded the harness racing contract. Arnold was quite specific about these amounts and intent." (*Ibid.*) Therefore, the court concluded, it was not an abuse of discretion for the trial court to find that "his financial interest in the harness racing contract was specific, concrete and significant, and based on objective evidence." (*Ibid.*) There is no such objective evidence of Price's or Citizens's intent to benefit from the lawsuit here. The trial court did not err in finding that neither stood to gain from the suit.

## V.   Sanctions

Respondents filed a motion for sanctions on appeal, alleging that Pomona brought this appeal solely for purposes of delay. Respondents sought sanctions in the "minimum" amount of "$200,000.00 as a one month estimate of the revenue" Regency earned while operating its billboards.

Whether to impose appellate sanctions is a matter within our discretion. (*Winick Corp. v. County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1181-1182.) Under section 907 and California Rules of Court, rule 8.276(a)(1), we may award sanctions when an appeal is frivolous and taken solely to cause delay. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that

47

the appeal is totally and completely without merit.  [Citation.]"
(*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) "The two standards are often used together, with one providing evidence of the other.  Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*Id.* at p. 649.)

Sanctions are not warranted in this case.  The issues Pomona identified and pursued in this appeal were arguable and not frivolous.  Moreover, plaintiffs' request for $200,000 has no basis in the record.  The motion accordingly is denied.

## DISPOSITION

The judgment and order of the trial court are affirmed. Respondents' motion for sanctions is denied.  Respondents are awarded their costs on appeal.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:

MANELLA, P. J.

WILLHITE, J.