Filed 6/24/24; Certified for Publication 7/10/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CARLTON LOEBER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LAKESIDE JOINT SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | H050688<br>(Santa Clara County<br>Super. Ct. No. 22CV402078) |

In this appeal, we consider whether a citizen initiative to create an exemption to any parcel tax levied by a school district falls within the initiative power "in matters of reducing or repealing any local tax, assessment, fee or charge." (Cal. Const., art. XIII C, § 3.)[1]

Carlton Loeber, representing himself as appellant in this matter, is the trustor of an irrevocable trust that owns two undeveloped properties within the Lakeside Joint School District (the district). Loeber does not live in the district or personally own any property there. Loeber obtained voter signatures to qualify the initiative, which would allow taxpayers over the age of 65 to obtain an exemption from any district parcel tax on undeveloped or unimproved parcels. The registrar of voters informed the district that the

---

[1] Unspecified references to "article" are to the California Constitution.

initiative petition had qualified for the ballot, but the district declined to call the election, citing cost concerns and legal objections to the applicability of the initiative authority to school districts.

Loeber filed a petition for writ of mandate (petition) seeking a court order that the district must place the initiative on the ballot for the upcoming general election or alternatively must call a special election or an all-mail ballot election to be held the following year. The trial court decided Loeber lacked standing and dismissed the petition without addressing its merits.

On appeal, Loeber maintains that he has standing to bring this petition based on his beneficial interest as the taxpayer for the trust properties and under the public interest exception to the beneficial interest requirement. On the merits, he contends the initiative is authorized by article XIII C, section 3 because it would reduce tax revenue for the school district.

We decide that Loeber has standing to pursue the writ petition. Nevertheless, we conclude the proposed initiative does not come within the language of article XIII C, section 3. We therefore modify the trial court's judgment to deny the writ petition and affirm the judgment as modified.

## I. FACTS AND PROCEDURAL BACKGROUND

*A. Facts*

The district, which consists of a single elementary school located in the hills of Los Gatos, serves approximately 72 students in both Santa Clara and Santa Cruz counties. In 2017, district voters approved Measure A, which imposed a parcel tax to provide funding for core programs in math, science, reading, and writing. Measure A passed with over 70 percent approval, meeting the required two-thirds majority threshold

2

under state law.[2]  Measure A replaced a previous parcel tax with a new parcel tax "for a period of eight years starting on July 1, 2017."

Measure A taxes all parcels within the district assessed at a value over $2,000 at the rate of $647 per parcel.  It exempts parcels used for single-family residential purposes if their owners are senior citizens (i.e., aged 65 or older), possess contiguous parcels, and/or receive Supplemental Security Income for a disability.  The tax imposed by Measure A provides yearly revenue of approximately $500,000 and is an important source of funds for the district.

In 1999, Loeber and his wife purchased two parcels located within the district (APN 088-101-11, 088-101-16) for $10,000.  In 2009, Loeber became the sole owner of the parcels and granted them to the Naschhausen Dynasty Trust (trust), naming Bonnie Vee Loeber as trustee.  According to Loeber's verified petition, he has paid all applicable property and parcel taxes on the parcels, including $10,824 in parcel tax since 2010.[3]  Loeber states that he "holds the parcels by an irrevocable trust."  The parcels consist of "steep forest land" and have not been developed for residential purposes.

In 2021, Loeber, who is over the age of 65, began to speak with district residents about an additional parcel tax exemption.  Loeber met William Bull, a district resident, who agreed to be a proponent of the proposed initiative.  Bull authorized Loeber to act on his behalf for the petition and initiative process in Santa Clara and Santa Cruz counties.  Loeber paid the administrative fees and spent approximately 60 hours gathering signatures for a petition to mandate an election on a proposed initiative to add a new

---

[2] The California Constitution authorizes cities, counties and "special districts" to impose "special taxes" "by a two-thirds vote of the qualified electors of such district." (Cal. Const., art. XIII A, § 4; see also Gov. Code, § 50075.)  The Legislature has specified that " '[s]pecial district' " as used in article XIII A includes but is not limited to "a school district."  (Gov. Code, § 50075.5, subd. (b).)

[3] As Measure A was enacted in 2017, we assume that Loeber's statement that he has paid $10,824 in parcel taxes to the district since 2010 includes prior parcel taxes not identified in the record.

parcel tax exemption.  The proposed initiative, titled "Citizens' Initiative within the Lakeside Joint School District for the Purpose of Allowing a Parcel Tax Exemption to all Owners of Unimproved Parcels who are Over 65 Years of Age" (initiative), would create a parcel tax exemption for certain payers of property tax on undeveloped or unimproved parcels in the district.[4]

Loeber submitted the signatures to the County of Santa Clara Registrar of Voters (Santa Clara County or county) and the County of Santa Cruz Registrar of Voters (Santa Cruz County) for signature count verification.  (See Elec. Code, §§ 9308, 9309.)  On June 16, 2021, Santa Clara County, as the lead agency, informed by letter the district's superintendent, Sean Joyce, that the initiative had secured enough qualifying signatures.  (Art. XIII C, § 3, art. II, § 8, subd. (b).)

The June 2021 letter from Santa Clara County to the district advised, pursuant to Elections Code sections 9310, subdivision (a)(2) and 1405,[5] that the district "may"

---

[4] According to the proof of publication filed with the registrar of voters on March 15, 2021, the initiative text reads, " 'Upon application any property tax payer over the age of 65 shall be granted an exemption from any Lakeside Joint School District parcel tax if that parcel is unimproved.' "  As discussed further *post* (pt. II.C.2.), the initiative text does not specifically reference Measure A or the current parcel tax exemptions.

[5] Elections Code section 9310, subdivision (a) provides that, for a qualifying initiative petition, the district board "shall . . . [¶] . . . [¶] (2) [s]ubmit the ordinance, without alteration, to the voters pursuant to [s]ection 1405."

Elections Code section 1405, states:  "(a) Except as provided in subdivision (b), the election for a county initiative that qualifies pursuant to [s]ection 9118 shall be held at the next statewide election occurring not less than 88 days after the date of the order of election.  The election for a municipal or district initiative that qualifies pursuant to [s]ection 9215 or 9310 shall be held at the jurisdiction's next regular election occurring not less than 88 days after the date of the order of election.  [¶]  (b)  The governing body of a county, city, or district may call a special election for the purpose of submitting an initiative measure to the voters before the date on which the initiative measure would appear on the ballot pursuant to subdivision (a).  If the governing body calls a special election pursuant to this subdivision, the election shall be held not less than 88 days nor more than 103 days after the order of the election."

4

"submit an ordinance, without alteration, to the voters pursuant to subdivision (b) of Elections Code [s]ection 1405," or "may call an all-mail ballot election" under conditions set forth in Elections Code section 4000. The letter encouraged the district "to seek legal counsel to determine how to proceed with the initiative including whether to call for an election, the type of election if so, and on what date." The letter requested that the district advise the registrar of voters in writing of its decision on the initiative.

In February 2022,[6] the district inquired with Santa Clara County and the Office of the Attorney General regarding its legal obligations with respect to the proposed initiative but received no response. The district thereafter determined that the initiative process "did not apply to school districts" and "a citizen's initiative petition could not expand an exemption to a parcel tax levied by a school district."

In July, while awaiting action by the district, Loeber contacted the county and spoke on at least two occasions with deputy county counsel Mary Hanna-Weir. Loeber's position was that Santa Clara County, as the elections official, could place the initiative on the ballot without any action by the district's governing board. Hanna-Weir informed Loeber that the district must act in the first instance.

Hanna-Weir informed Loeber of the relevant election deadlines, including that a resolution to place the initiative on the ballot of the November 8 general election must be received by the county by August 12 (88 days before the election). Loeber indicated that he understood he could file a court petition for writ of mandate but hoped to settle the matter with the district without resorting to litigation. Hanna-Weir conveyed to Loeber that if he filed a writ petition, the county should be named as a respondent and the matter

As both Loeber and the district note in their briefing, the Elections Code provisions cited by the county in its June 2021 letter pertain to cities, counties, and special districts with ordinance power. (See Elec. Code, §§ 1405, 9300 et seq. [certain districts excepted from procedures for enacting ordinance].) Loeber and the district appear to agree that there is no Elections Code provision that explicitly addresses school district initiatives.

[6] Unless otherwise indicated, all dates were in 2022.

5

should be filed "expediently to ensure resolution prior to the [general election] printing deadline."

The district did not take any action to place the initiative on the ballot by the August 12 deadline for the general election.

*B. Petition for Writ of Mandate*

On August 17, Loeber filed this action for writ of mandate in the Santa Clara County Superior Court. On August 19, the trial court granted Loeber's ex parte application for an order to shorten time. (See Code Civ. Proc., § 35, subd. (a) [granting precedence to proceedings involving certain election related matters].)

Loeber's petition named the district as the respondent and others as real parties in interest, including the county, the initiative's proponent William Bull, and the unnamed "63 voters who signed the petition and have a right to put the measure on the ballot." The petition asserted that under article XIII C, section 3, voters in school districts have the right to petition for elections on tax matters, with a signature requirement no greater than that for statewide initiatives. It further alleged that insofar as the county's June 2021 letter confirmed adequate signatures to place the initiative on the ballot, the district must submit the initiative to the voters.

The petition alleged that Loeber has a personal beneficial interest in the outcome of the proceedings because he pays the taxes on the two parcels held by the trust and must continue to do so "to maintain the property for the use of his family and children." It also alleged that according to the trust terms Loeber has the ability to reacquire the trust property and "redeem the land into his own name." If the initiative passes, Loeber alleged that he may qualify for the newly allowable tax exemption. The petition also alleged Loeber's "public interest" in the operation of the citizen initiative process concerning taxes as set forth in article XIII C, section 3. The petition asserted that the district has a clear and present legal duty and ability to perform, and Loeber has no other adequate remedy.

6

The petition sought a writ of mandate "ordering the district to call the election on this measure for the November 8[] general election date" and for daily penalties if the district fails to do so, or, alternatively, to pay a penalty sanction of $10,000 each to Loeber and Bull *and* to call by October 1 for either a special election to be held by March 15, 2023, or an all-mail ballot election to be held on May 2, 2023. The petition sought declaratory relief as to whether Elections Code sections 1302 and 1405 authorize the registrar of voters to place a school district initiative on the ballot without action by the district's board, or whether the school district must call the election for a citizen ballot initiative.

The trial court held a hearing on the petition. In addition to appearances by Loeber and the district, counsel for Santa Clara County and Santa Cruz County—as the government agencies ultimately responsible for placing the initiative on the election ballots—appeared. Both the district and Santa Clara County filed written opposition with supporting declarations to the petition.

The district argued that the citizen's initiative process does not apply to school districts, and citizens have no constitutional or statutory authority to amend actions taken by school boards. The district maintained that article XIII C, section 3 "is declaratory of existing citizen initiative powers and does not create or expand the[] power to reach parcel taxes adopted by school districts." (Capitalization, boldface, & italics omitted.) The district also challenged the timing of the petition and the district's limited ability to respond given that timing. The district asserted that Loeber could have earlier brought a writ or declaratory relief action and maintained that even if the court were to grant relief, it would be too late to place the initiative on the ballot for the upcoming general election or to call a special election.

The district requested that the trial court take judicial notice of Resolution No. 16/17-03, which authorized the 2017 ballot measure placing the Measure A parcel tax on the ballot. According to the declaration of district superintendent Joyce, the parcel tax

7

provides the district with over $500,000 per year in "essential revenue" and accounts for over 17 percent of the district's total budget. Joyce declared that "[m]erely placing an initiative on a ballot is a significant financial undertaking for this school district, as it would likely cost $50,000 to $80,000 and possibly twice that if the [d]istrict called a special election. Placing an initiative on a general election is roughly equivalent to the salary of one of the [d]istrict's five teachers." Joyce asserted that the district needed "strong and clear justification" to divert educational programming by spending on an election measure and indicated it had determined, after reviewing the notification letter from the county, that no legal authority required the district to place an initiative to expand a parcel tax exemption on the ballot.

In its opposition, the county took "no position on" the merits of the requested relief seeking to require the district to place the initiative measure on the ballot. However, the county opposed "placing the [m]easure on the November 8, 2022 General Election ballot because granting such relief would 'substantially interfere with the conduct of the election,' ([] Elec. Code, § 13314, subd. (a)(2)(B)) by jeopardizing the Registrar [of Voters]'s ability to meet its statutory obligations to print and distribute elections materials." The county acknowledged that the court had shortened time on Loeber's petition in accordance with the principle that " '[p]roceedings in cases involving . . . the certification or denial of certification of ballot measures, and election contests . . . shall be given precedence' " (Code Civ. Proc., § 35, subd. (a)) but maintained that "even with expedient attention . . ., the relief requested related to the November 8, 2022 General Election may not be granted without substantially interfering with the conduct of the election." The county provided a detailed explanation of the statutory requirements that affect the final printing deadline of September 2 and explained that adding a ballot measure to the general election would interfere with the steps required to prepare and print the ballot, including translating the measure into nine or more languages, creating

8

multiple accessible formats, and preparing the county's voter information guide for all the applicable versions.

The county emphasized that it did "not oppose this portion of the relief sought lightly" but noted it had been in "regular contact" with Loeber and had explained the urgency of resolving the matter before the applicable deadlines. Nevertheless, Loeber did not file the petition until after the August 12 deadline for the district to file a resolution calling for the measure to be placed on the November general election ballot. Therefore, the county opposed any relief that would result in placing the initiative measure on the November ballot.

At the hearing, the trial court stated that due to the delay in filing the petition and the cutoff filing date for both Santa Clara and Santa Cruz counties, the court would not order the school district to put the initiative on the November general election ballot and requested supplemental briefs on whether Loeber had standing to bring the writ.

*C. Dismissal for Lack of Standing*

The parties and counsel for the respective counties appeared at a hearing on October 3 in which the trial court announced its tentative decision to dismiss the petition for lack of standing. In a written order dismissing the petition for writ of mandate (order), the court adopted its tentative ruling and explained its reasoning.

The trial court rejected Loeber's standing arguments and concluded he had not shown a "direct and substantial" interest in the asserted right. (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 (*Save the Plastic Bag*).) The court reasoned that Loeber did not own property or live within the district's boundaries, failed to provide any persuasive authority that the trust could qualify for an exemption, and presented insufficient evidence regarding the trust or Loeber's purported obligation to pay its property taxes. The court further held that Loeber's labor to qualify the initiative was not a sufficient basis to establish standing, nor did his status as the

9

individual authorized in an " 'official capacity' " by the initiative's proponent to pursue placement on the ballot create a beneficial interest to establish standing to bring the writ.

The trial court also rejected application of the public interest exception. The court agreed with Loeber that a public interest exists in ensuring that ballot measures can be voted on by the electorate. However, the court questioned the public interest in this case. It noted there was no showing of interest or involvement by the public in the action on the initiative, including by its proponent, nor had the court received any information regarding others (apart from Loeber) who would benefit from the initiative. The court thus concluded that the public need "is not weighty."

In rejecting Loeber's public interest exception arguments, the court also cited the impossibility of meeting the statutory timelines for placing an initiative on the ballot and reasoned that the "delay in bringing this action means that there is no remaining public duty for the [s]chool [d]istrict to order the initiative to be placed on the ballot, and to do so would be contrary to the language of Elections Code section 1405." It found there were " 'competing considerations of a more urgent nature' " outweighing the public interest in placing the initiative on the ballot, including a "significant dispute" regarding application of the initiative process to school districts, the administrative burden to the county, the significant cost to the district and impact on its students, and the artificial exigency of the petition, considering Loeber could have filed it anytime in the past year. The trial court dismissed the petition for lack of standing.

Loeber appeals from the order of dismissal. (Code Civ. Proc., § 904.1, subd. (a)(1).) Loeber elected to proceed by settled statement on appeal, and on June 8, 2023, the trial court filed a modified settled statement. (Cal. Rules of Court, rule 8.137(f)(3)(b)(i).)

## II. DISCUSSION

Loeber argues the trial court erred in deciding he lacks standing. He asserts both private standing based on his "personal equitable beneficial interest" in the writ as the

10

"drafter, sponsor and prime executive in the initiative campaign" and public interest standing to enforce his and others' constitutional right to the initiative process. Loeber maintains that, to evaluate public interest standing, this court must first ascertain the district's duty under article XIII C, section 3 (section 3) to submit the initiative to the voters. Loeber contends that section 3 expressly applies to school districts and provides clear constitutional authority for the initiative.

The district disputes Loeber's assertion of standing. It maintains that even if Loeber has standing to pursue the petition, the initiative process is inapplicable to the district and, in any event, the initiative does not come within the scope of initiative power described in section 3.

A. *Standing Principles Applicable to Petitions for Writ of Mandate*

"A writ of mandate under [Code Civ. Proc.] section 1085 is a vehicle to compel a public entity to perform a legal duty, typically one that is ministerial." (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1173 (*City of Pomona*).) It "is the traditional remedy for the failure of a public official to perform a legal duty." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 (*Common Cause*).) To obtain relief under traditional mandamus, "a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists (Code Civ. Proc., § 1086); (2) ' "a clear, present, . . . ministerial duty on the part of the respondent" '; and (3) a correlative ' "clear, present and beneficial right in the petitioner to the performance of that duty." ' " (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340; see Code Civ. Proc., §§ 1085–1086.)

A ministerial duty " 'is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.' " (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) The correlative requirement that the party seeking writ

11

relief must be "beneficially interested" (Code Civ. Proc., § 1086) "establishes a standing requirement for writs of mandate." (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8; see *The Assn. of Deputy Dist. Attorneys etc. v. Gascón* (2022) 79 Cal.App.5th 503, 523, review granted Aug. 31, 2022, S275478 (*Gascón*).)

" 'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' " (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 165.) "The beneficial interest must be direct and substantial." (*Ibid*.)

The beneficial interest standard "is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." ' " (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362 (*Associated Builders*).) "Thus, 'the writ must be denied if the petitioner will gain no direct benefit from its issuance and suffer no direct detriment if it is denied.' " (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 913 (*City of Rialto*).)

On the other hand, "[a] petitioner who is not beneficially interested in a writ may nevertheless have 'citizen standing' or 'public interest standing' to bring the writ petition under the 'public interest exception' to the beneficial interest requirement." (*City of Rialto*, *supra*, 208 Cal.App.4th at p. 913.) " ' "[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' " (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 166.) "This ' "public right/public duty" exception to the requirement of beneficial interest for a writ of mandate' 'promotes the policy of guaranteeing citizens the opportunity to ensure that

12

no governmental body impairs or defeats the purpose of legislation establishing a public right.' " (*Ibid*., quoting *Green v. Obledo* (1981) 29 Cal.3d 126, 144 (*Green*).)

In ascertaining public interest standing, " '[t]he courts balance the applicant's need for relief (i.e., his beneficial interest) against the public need for enforcement of the official duty. When the duty is sharp and the public need weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater personal interest than that of a citizen who wants the law enforced.' " (*City of Pomona*, *supra*, 28 Cal.App.5th at p. 1174.) But "where the claim of 'citizen' or 'public interest' standing is driven by personal objectives rather than 'broader public concerns,' a court may find the litigant to lack such standing." (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1057 (*SJJC Aviation*).)

"Determining whether the exception is warranted involves a 'judicial balancing of interests' [citation], to promote 'the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' " (*SJJC Aviation*, *supra*, 12 Cal.App.5th at p. 1058.) "The balancing is done on a sliding scale: 'When the public need is less pointed, the courts hold the petitioner to a sharper showing of personal need.' " (*City of Pomona*, *supra*, 28 Cal.App.5th at p. 1174.) Furthermore, application of the public interest exception is not a given. "No party, individual or corporate, may proceed with a mandamus petition as a matter of right under the public interest exception." (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 170, fn. 5.) Rather, public interest standing serves as " 'an exception to, rather than repudiation of, the usual requirement of a beneficial interest. The policy underlying the exception may be outweighed by competing considerations of a more urgent nature.' " (*Ibid*.; see *Green*, *supra*, 29 Cal.3d at p. 145.)

On appeal from a petition for writ of mandate, we apply the same standard of review as the trial court and review the local agency's (here, the district's) action de novo. (*Hamilton & High, LLC v. City of Palo Alto* (2023) 89 Cal.App.5th 528, 547.) We

13

decide only whether the district's refusal to call an election on the initiative " ' " 'was arbitrary, capricious or entirely lacking in evidentiary support, or whether it failed to conform to procedures required by law.' " ' " (*Ibid.*)

### B. *Standing Analysis*

In his briefing, Loeber uses a variety of formulations and arguments to support his assertion of standing to bring the petition. We distill his arguments into two main claims. First, Loeber contends he is beneficially interested in the petition based on (1) his personal financial interest in reducing his tax burden as the individual paying parcel taxes on behalf of the trust; and (2) his role as the drafter, sponsor, and "official" (boldface omitted) or "authorized executive" of the successful initiative campaign to qualify the measure for the ballot. In addition, Loeber contends he has standing under the public interest exception because he represents the interest of the public in enforcing citizens' constitutional right to the initiative power as established by the California Constitution. Loeber argues that for this court to assess whether he has standing pursuant to the public interest exception, we must first answer the substantive questions in his petition concerning the constitutional issues and public right at stake.

We disagree with Loeber that the merits issue presented by the writ petition must be resolved as a prerequisite to deciding whether Loeber has standing under the public interest exception. Standing to sue " ' "is the right to relief in court." ' " (*People ex rel. Dept. of Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 988 (*El Dorado*).) A court's determination of standing " 'focuses on the party seeking to get his complaint before a . . . court and not on the issues he wishes to have adjudicated.' [Citation.] A party enjoys standing to bring his complaint into court if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case." (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 159.) Standing is a jurisdictional issue. (*Common Cause*, *supra*, 49 Cal.3d at p. 438.)

14

Because lack of standing is a jurisdictional defect (*Rialto*, *supra*, 208 Cal.App.4th at p. 912), the question of standing to pursue mandate relief must be addressed as a threshold question before reaching the merits of a dispute. (*El Dorado*, *supra*, 36 Cal.4th at p. 983 ["We are concerned here not with the merits of the underlying dispute, but only with . . . whether the [party] has standing to petition for a writ of mandate."]; *Gascón*, *supra*, 79 Cal.App.5th at p. 523, review granted [turning first to standing based on whether the petitioner has a right to seek mandamus relief before considering whether the government agency has a ministerial duty to act].) We begin with the standard of review.

1.  Standard of Review

Standing is a question of law that courts typically review de novo. (*San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73 (*San Luis*).) To the extent the standing determination is based on underlying factual findings, we review those findings of the trial court for substantial evidence. (*Ibid.*) There is a split in appellate authority concerning the standard for reviewing a trial court's application of the public interest exception. (Compare *People for Ethical Operation of Prosecutors and Law Enforcement v. Spitzer* (2020) 53 Cal.App.5th 391, 408 (*Spitzer*) [de novo] with *City of Pomona*, *supra*, 28 Cal.App.5th at p. 1174 [abuse of discretion].)

In *City of Pomona*, the Court of Appeal acknowledged that standing determinations are generally reviewed de novo but reasoned that because the "public interest exception involves a judicial balancing of interests [it] is reviewed for abuse of discretion." (*City of Pomona*, *supra*, 28 Cal.App.5th at p. 1174.) *City of Pomona* derived this conclusion from *Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 874, based on language in that case emphasizing that even under circumstances involving a public right/public duty, "application of the doctrine is still discretionary." (*Ibid.*) However, as the Court of Appeal observed in *Spitzer*, neither *City of Pomona* nor *Reynolds* provides any specific analysis or authority for utilizing abuse of discretion review. (*Spitzer*, *supra*, 53 Cal.App.5th at p. 409.) The *Spitzer* court reasoned that

15

insofar as standing is typically subject to de novo review, raises important public policy questions in the public right/public duty context, and rarely depends on resolving underlying factual disputes, the proper standard of review is de novo. (*Id*. at pp. 408–409.)

We agree with the Court of Appeal's reasoning in *Spitzer*. The balancing of public policy considerations and legal principles relevant to the trial court's analysis of the public interest exception falls within the ambit of de novo review. (*Spitzer*, *supra*, 53 Cal.App.5th at p. 409; see *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 ["If . . . the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently."]; *In re Collins* (2001) 86 Cal.App.4th 1176, 1181 [same].) To the extent there are underlying factual questions relevant to standing, we defer to the trial court's factual findings based upon substantial evidence. (See *San Luis*, *supra*, 15 Cal.App.5th at p. 73.)

We therefore independently review the trial court's legal determination that Loeber lacks standing and review for substantial evidence any relevant factual findings by the court.

### 2. Beneficial Interest

Loeber asserts he has a "direct and substantial" interest in passage of the initiative. He argues that even if his status with respect to the trust does not legally obligate him to pay the taxes on the properties (a duty that he appears to acknowledge belongs to the trustee of the trust), he is in fact the "only person who will pay the tax" without which "the trust he formed for his children would lose the property." Loeber refers to this interest as "obviously [] a personal interest that is real, concrete and particular" and contends that because mandate is an action in equity, "courts can rule according to reality and fact instead of according to laws which are imperfect and unjust in that situation."

16

These arguments and the related evidence fail to establish that Loeber has a "beneficial interest" that is "direct and substantial." (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 165.) Loeber granted his properties to the trust in 2009. He states that the trust is irrevocable. He does not purport to currently own any property subject to the district's parcel tax. Loeber cites his annual payment of taxes on the parcels and his "beneficial use of the parcels held by [the] trust," asserting there is "no one else to pay" the taxes and without his payment of taxes he would "lose the beneficial interest." Loeber also avers that as the settlor/trustor and grantor, he can "re-acquire the property" pursuant to the trust, a short excerpt of which he included in his brief on standing filed in the trial court. Loeber points to the language in the excerpt, which states the settlor's intent that the properties "be used in perpetuity by the Loeber family" and provides that during the settlor's lifetime, Loeber "shall have the power as [s]ettlor (in a non-fiduciary capacity, without the approval or consent of the [t]rustee or any other person acting in a fiduciary capacity, and without regard to the effect it may have on any [b]eneficiary of the trust) to reacquire all or any portion of the principal of the trust." (Italics omitted.)

These assertions, even if factually established, are insufficient to satisfy the standard for beneficial interest articulated by our Supreme Court. Loeber has not produced the trust document establishing his alleged ability to reacquire the trust property without the approval of the trustee or any beneficiary, which appears inconsistent with his representation of "an irrevocable trust." His reacquisition of the properties represents a hypothetical possibility that is neither " ' "actual [n]or imminent" ' " (*Associated Builders*, *supra*, 21 Cal.4th at p. 362) but appears entirely " ' "conjectural or hypothetical." ' " (*Ibid*.)

Further, although the evidence of Loeber's property and parcel tax payments on the properties owned by the trust explains Loeber's personal interest in a ballot measure to expand the parcel tax exemption to potentially include the trust properties, it does not amount to a concrete and particularized " 'legally protected interest' " in placing the

17

initiative on the ballot for district voters.  (*Associated Builders*, *supra*, 21 Cal.4th at p. 362.)  "A petitioner has no beneficial interest within the meaning of the statute if he or she 'will gain no direct benefit from [the writ's] issuance and suffer no direct detriment if it is denied.' "  (*SJJC Aviation*, *supra*, 12 Cal.App.5th at p. 1053; accord, *City of Rialto*, *supra*, 208 Cal.App.4th at p. 913.)  Loeber's interest in ensuring the trust's maintenance for its beneficiaries does not create a direct benefit or detriment, for him personally, in the issuance or denial of the writ.  We conclude that Loeber has not shown that he is "beneficially interested" to establish standing within the meaning of Code of Civil Procedure section 1086.

Loeber also advances two arguments related to his role as the drafter, sponsor, and "official" (boldface omitted) or "authorized executive" of the successful initiative campaign to qualify the measure for the ballot.  He contends that "[i]t is his right to seek this writ so that he will receive the lawful fruit of his labor."  He further asserts that because William Bull, the proponent of the initiative, appointed him to be the sole representative in all required functions with respect to signature collection and communication with the registrar of voters, he is beneficially interested in the writ petition by the fact of his "official capacity."  (Boldface omitted.)

Loeber offers no legal authority to support these alleged bases for standing.  He relies on loose analogies to cases that contain no analysis of standing.  Loeber compares his role in obtaining signatures to certify the initiative for the ballot and pursuing this writ and appeal to *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924 (*California Cannabis*).  However, *California Cannabis* does not address standing and involved plaintiffs composed not only of the non-voter nonprofit organization, California Cannabis Coalition, but of the individual initiative proponents.  (*Id.* at p. 931, fn. 3.)  Absent any discussion in *California Cannabis* of the basis for the plaintiffs' standing to pursue the writ of mandate action and appeal, we do not draw any guidance on this issue

18

from that case.  (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11 [" ' "[C]ases are not authority for propositions not considered." ' "].)

We similarly reject Loeber's attempt to analogize his legal standing to that of the plaintiffs in *City and County of San Francisco v. All Persons Interested in the Matter of Proposition G* (2021) 66 Cal.App.5th 1058.  In *Proposition G*, the city and county of San Francisco filed a complaint seeking to validate Proposition G, an initiative measure previously passed by the voters authorizing an annual parcel tax for the benefit of the San Francisco school district.  (*Id.* at pp. 1065–1066.)  *Proposition G* did not involve a standing challenge and does not support Loeber's argument for private standing here.

Although we conclude that Loeber has not established standing under any of his beneficial interest theories, we consider below whether his advocacy of the initiative as a means of enforcing citizens' constitutional right to the initiative power comes within the public interest exception.

### 3.   Public Interest Exception

Loeber centers his appeal on the constitutional right of California citizens to " 'alter or reform' " government by voter initiative.  (Art. II, § 1.)  He asserts public interest standing "as a representative of all voters in California to secure their right to initiative in school districts on matters affecting taxation."  Because we have concluded that the proper standard of review concerning the public interest exception is de novo (*Spitzer*, *supra*, 53 Cal.App.5th at p. 409), we independently review the factors relevant to the trial court's decision, deferring to the trial court's factual findings where supported by substantial evidence.

Loeber's claim to "citizen standing" or "public interest standing" rests heavily upon the public right he seeks to vindicate through this mandate action.  Loeber's petition alleges that voters have a constitutional right to petition for elections on tax matters in school districts with a signature requirement no greater than that for statewide initiatives. He variously asserts he is defending, on behalf of all voters in California, "the right of

19

electors to bring school district initiatives," "the right of electors in school districts to petition on issues that affect taxes," "the political right of 64 signers of the petition" (boldface omitted), the "enforcement of Article XIII C [s]ection 3 of the [California] Constitution, the "right to initiative in school districts on matters affecting taxation," the "right to defend the constitutional right to initiative anywhere in the state," and the "constitutional right to ballot access."

Taken together, we understand the right asserted by Loeber to be that of voters in a school district to utilize the initiative process to affect district tax measures. Loeber alleges that section 3 guarantees voters in school districts the right to the initiative on tax matters.[7] The district, meanwhile, maintains that the citizen's initiative process is inapplicable to school districts.

Our Supreme Court has described the initiative power "as ' "one of the most precious rights of our democratic process." ' " (*California Cannabis*, *supra*, 3 Cal.5th at p. 930.) The applicability of section 3 as it pertains to the initiative power "in matters of reducing or repealing any local tax, assessment, fee or charge" to school districts is unquestionably a matter of public interest for voters impacted by district special taxes. The trial court recognized the public interest in ensuring ballot measures created through the citizen initiative process can be voted on by the electorate. Nevertheless, the court declined to apply the public interest exception. The court found that Loeber's late filing of the writ petition, the resulting inability of the district to comply with the Elections Code timelines for the November general election and administrative burden to the

---

[7] Section 3 states, "Notwithstanding any other provision of this Constitution, including, but not limited to, [s]ections 8 and 9 of [a]rticle II, the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax, assessment, fee or charge. The power of initiative to affect local taxes, assessments, fees and charges shall be applicable to all local governments and neither the Legislature nor any local government charter shall impose a signature requirement higher than that applicable to statewide statutory initiatives." We discuss this provision in more detail below.

20

county, and an apparent lack of engagement in the writ proceedings by the initiative proponent or signers, meant that "the public need here is not weighty." The court also noted that the significant cost to the district would have "a direct impact on the [s]chool [d]istrict's ability to serve the students."

Given the significance of the public right in dispute, we disagree as a matter of law with the trial court's assessment of the importance of the right implicated in Loeber's petition. The public interest exception applies " ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty. " ' " (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 166.) The trial court questioned the extent of the public duty in this case, citing the "significant dispute regarding whether the initiative process applies to school districts" and the timing of Loeber's writ petition, which the court observed came too late to comply with the election timelines set forth in Elections Code section 1405.

That the public right at issue is *disputed* does not render it less weighty under the circumstances, or the related public duty less sharp. On the contrary, the fact that there is a colorable argument regarding section 3's authorization of the proposed initiative heightens the significance of the public duty that Loeber alleges the district has evaded.

A writ of mandate is a proper means of seeking relief from the district's decision not to proceed with an election on the qualifying initiative. (*Common Cause*, *supra*, 49 Cal.3d at p. 442 ["Mandamus . . . is the traditional remedy for the failure of a public official to perform a legal duty."].) Loeber's assertion of the public interest exception thus fulfills the exception's purpose of giving citizens an opportunity to ensure the enforcement of public rights and duties. (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 167; *Green*, *supra*, 29 Cal.3d at p. 144.)

Further, the timing of the petition does not provide a persuasive basis to deny application of the public interest exception. The issue presented by the petition concerning the initiative's qualification for the ballot remains an open question even after

21

the general election deadlines have passed because the initiative could be placed on a future ballot. In such cases, courts frequently exercise their discretion to resolve constitutional issues pertaining to election laws raised by parties in elections that were held before a decision could be reached, given the broad public interest and likely recurrence of the issue. (See, e.g., *Edelstein v. City and County* (2002) 29 Cal.4th 164, 172; *Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 527.)

Moreover, the county's opposition to the petition outlined the significant administrative burden and interference with the conduct of the election that would result from an order to place the initiative on the November 8 general election ballot but did not address Loeber's alternative request for a later, special election or all-mail ballot election in 2023. While it is true that Loeber could have filed his petition prior to the August 12 ballot deadline in order to avoid disrupting general election preparations (*Vandermost v. Bowen* (2012) 53 Cal.4th 421, 453 [noting courts will frequently exercise original writ jurisdiction to speedily resolve a legal issue affecting the electoral process]), the district cites no legal authority requiring Loeber to have done so once the initiative had qualified for the ballot.[8]

The record shows that Loeber was in close communication with the county leading up to August 12 to try to determine the best course of action. As late as July 11, district superintendent Joyce communicated to Loeber that the district's board was deliberating the issue and there would likely be "some decision or action" at the next board meeting in August, but the district never informed Loeber of any decision. Under these circumstances, the trial court's finding concerning Loeber's delay in filing the petition

---

[8] The timing provisions of Elections Code section 1405, which require the election on a qualifying initiative to be held not less than 88 days after the date of the order of election (or, not less than 88 days nor more than 103 days after the order of the election on a special election) govern the relevant timelines. However, the district cites no legal authority to suggest that the party advocating for the initiative bears the burden of ensuring a timely order of election by the government agency.

until several days after the August 12 deadline—while supported by substantial evidence—does not constitute a compelling consideration against extending the public interest exception to his petition.

Similarly, the trial court found that the public appeared unengaged in the litigation and the initiative seems "to be quite personal" to Loeber. We defer to these findings as a factual matter. Nevertheless, we decide, as a matter of law under the public interest exception, that the county's letter confirming the initiative obtained enough voter signatures to qualify for the ballot based on the percentages set forth in article XIII C, section 3 and article II, section 8, subdivision (b) is an adequate indication of public interest in placing the initiative on the ballot.[9] This circumstance distinguishes the public interest from cases in which "the claim of 'citizen' or 'public interest' standing is driven by personal objectives rather than 'broader public concerns.' " (*SJJC Aviation*, *supra*, 12 Cal.App.5th at p. 1057.)

While it would be improper, as the Supreme Court pointed out in *Save the Plastic Bag*, for a petitioner to "attempt to use CEQA to impose regulatory burdens on a business competitor, with no demonstrable concern for protecting the environment" (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 169), Loeber's efforts to compel the district to hold an election on the initiative are not commercially motivated and, as evinced by the fact the petition received the requisite number of signatures, reflect a broader public interest in utilizing the initiative power to make changes to the district's parcel tax. That Loeber may also personally benefit from the exemption does not defeat public interest standing under these circumstances.

---

[9] We further acknowledge the filing in this court on January 8, 2024, of a "joint motion in intervention joint petition for writ of mandate and request for declaratory relief" (capitalization omitted) with accompanying declarations of initiative proponent William Bull and district residents and initiative signers John L. Miller and Steve Scott. This court denied the "joint motion" because the relief sought was not cognizable in this court.

23

The cost to the district of placing the initiative on the ballot, which according to district superintendent Joyce would amount to $50,000 to $80,000, or "roughly equivalent to the salary of one of the [d]istrict's five teachers," is not an insignificant consideration in the " 'judicial balancing of interests' " (*SJJC Aviation*, *supra*, 12 Cal.App.5th at p. 1058) when assessing public interest standing. We recognize the district's position, also observed by the trial court, that placing an initiative on the ballot for an upcoming general or special election could be cost prohibitive and would adversely impact the educational programming of the school. But where the public right concerns the initiative power, "courts have consistently declared it their duty to ' "jealously guard" ' and liberally construe the right so that it ' "be not improperly annulled." ' " (*California Cannabis*, *supra*, 3 Cal.5th at p. 934.) Precedent dictates that "when weighing the tradeoffs associated with the initiative power, we [] acknowledge[] the obligation to resolve doubts in favor of the exercise of the right whenever possible." (*Ibid*.) Against this backdrop, we conclude that the cost to the district of calling a general or special election on the initiative does not outweigh the district's duty to act on an arguably valid ballot petition.

In light of the significant public right in dispute, the public interest demonstrated by voter signatures on the initiative petition, and the relative lack of persuasiveness of the other considerations, we conclude Loeber has articulated a sufficiently weighty public need and public duty to apply the public interest exception here.[10] We therefore turn to the merits of Loeber's claim that the district erred in refusing to place the initiative on the ballot.

---

[10] Having concluded that the public interest exception applies, we need not address Loeber's alternative request to treat the appeal as an original petition for writ of mandate and, if necessary, allow him to file a joint petition with one of the signers of the initiative petition.

*C. Section 3 Authorization for Initiative to Create New District Parcel Tax*

    *Exemption*

The district contends that the citizen's initiative process is inapplicable on these facts. It maintains there is no constitutional or statutory authority authorizing the initiative power to amend actions taken by school boards because section 3 is declaratory of existing citizen initiative powers and does not create or expand that power to reach school district parcel taxes. The district further asserts that, by its text, the initiative does not fall within the scope of the initiative power conferred by section 3. Loeber counters that there is no restriction on the use of the initiative process in the area of local taxation, and section 3 expressly applies to school districts.

There appears to be no published legal authority on whether section 3 applies to citizen initiatives to affect school district parcel taxes. Although we acknowledge the importance of the question, we decide we need not resolve it here. Even assuming arguendo that section 3 applies to school districts, we conclude the initiative does not come within the scope of section 3 because it is not a "matter[ ] of reducing or repealing any local tax, assessment, fee or charge" within the intended meaning of that provision.

To explain the basis for our decision, we provide a brief overview of the initiative power and constitutional reforms for increased voter control over taxation before turning to our analysis of the proposed initiative.

    1.  <u>Constitutional Background</u>

"Under the California Constitution, '[t]he legislative power of this State is vested in the California Legislature . . . but the people reserve to themselves the powers of initiative and referendum.' ([A]rt. IV, § 1.) The powers of initiative and referendum were enacted as part of the Constitution in 1911 as companion reforms. The initiative power allows voters to propose new measures and place them on the ballot for a popular vote. If the measure is approved by popular vote, it becomes law. ([A]rt. II, § 8; *id*., § 10, subd. (a).)" (*Wilde v. City of Dunsmuir* (2020) 9 Cal.5th 1105, 1111 (*Wilde*).)

Article II describes both the statewide initiative (art. II, § 8) and reserves the right of initiative to electors of cities and counties "under procedures that the Legislature shall provide" (art. II, § 11). (*City and County of San Francisco v. All Persons Interested in Matter of Proposition C* (2020) 51 Cal.App.5th 703, 709 (*Proposition C*).) The reservation of initiative power addressed the growing " 'dissatisfaction with the then governing public officials and a widespread belief that the people had lost control of the political process.' " (*California Cannabis*, *supra*, 3 Cal.5th at p. 934.)

Several decades after the establishment of the initiative power in the Constitution, "voters enacted a series of reforms aimed at increasing voter control over revenue-raising measures." (*Wilde*, *supra*, 9 Cal.5th at p. 1112.) Three principal initiatives—Proposition 13, Proposition 218, and Proposition 26—collectively limit government authority to collect revenue through taxes, fees, and other charges. (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 10 (*REU Rates*); *Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 785; *Proposition C*, *supra*, 51 Cal.App.5th at p. 710.)

Proposition 13, adopted in 1978, added article XIII A to the state Constitution. Its purpose was to "to cap increases in property taxes and assessments, as well as other state and local taxes." (*Wilde*, *supra*, 9 Cal.5th at p. 1112; see *City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1199 [describing Prop. 13's tax relief and supermajority approval measures].) In 1996, voters seeking "to close [a] perceived loophole" (*United Water*, at p. 1200) in Proposition 13 passed Proposition 218, "which further curbed state and local government authority to generate revenue through taxes and other exactions." (*Wilde*, at p. 1112.) Proposition 218, known as the " ' "Right to Vote on Taxes Act," ' " "added articles XIII C and XIII D to the state Constitution." (*REU Rates*, *supra*, 6 Cal.5th at p. 10.) Article XIII D sets out "the authority of local governments to assess taxes and other charges on real property" (*ibid*.), while article XIII C limits "the other methods by which local governments can exact revenue using fees and taxes not based on real property value or ownership." (*Ibid*.) Most recently, "in 2010,

voters approved Proposition 26, which expanded the reach of these limitations by broadening the definition of 'tax' to cover 'any levy, charge, or exaction of any kind imposed by a local government,' subject to several specified exceptions. ([A]rt. XIII C, § 1, subd. (e).)" (*Wilde*, at p. 1112.)

Among the changes effected by Proposition 218, article XIII C addresses voter approval for local tax levies, including the initiative power.  Section 1 of article XIII C defines the terms used in the article, including " '[l]ocal government' " and " '[s]pecial district.' "  (Art. XIII C, § 1.)  " 'Local government' " includes "any special district" (*id*., subd. (b)), and " '[s]pecial district' " expressly includes "school districts."  (*Id*., subd. (c).)  Section 2 categorizes all taxes imposed by local government as "either general taxes or special taxes" and allows "[s]pecial purpose districts or agencies, including school districts" to levy only special taxes.  (Art. XIII C, § 2, subd. (a).)  It requires any special tax imposition or increase to be approved by a two-thirds vote of the electorate.  (*Id*., subd. (d).)  Section 3, on the initiative power for local taxes and other assessments and fees, states, "Notwithstanding any other provision of this Constitution, including, but not limited to, Sections 8 and 9 of Article II, the initiative power *shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax*, assessment, fee or charge.  The power of initiative to affect local taxes, assessments, fees and charges shall be applicable to all local governments and neither the Legislature nor any local government charter shall impose a signature requirement higher than that applicable to statewide statutory initiatives."  (Art. XIII C, § 3, italics added.)

After the passage of Proposition 13, the Legislature promptly enacted general enabling legislation authorizing the imposition of special taxes by school districts. (*Borikas v. Alameda Unified School Dist.* (2013) 214 Cal.App.4th 135, 143; see Gov. Code, § 50075 et seq.)  However, the subsequent passage of another statewide measure, Proposition 26, "called into question the taxing power of all local districts that looked to the general enabling legislation enacted after Proposition 13 and commencing with

27

[Government Code] section 50075 as the source of their authority." (*Borikas*, at p. 144.) Various legal challenges ensued, and the Legislature subsequently enacted special legislation for school districts. (*Id*. at p. 145.)

Government Code section 50079 specifically authorizes school districts, subject to article XIII A, section 4, to "impose qualified special taxes within the district." (Gov. Code, § 50079, subd. (a).) The statute defines " 'qualified special taxes' " as "special taxes that apply uniformly to all taxpayers or all real property within the school district, except that unimproved property may be taxed at a lower rate than improved property." (*Id*., subd. (b)(1).) It also authorizes exemptions from the " '[q]ualified special taxes' " for specified categories of taxpayers. (*Ibid*.) School districts thus have the power to impose special taxes by a two-thirds vote of the qualified electors of the district, consistent with the constitutional requirements of article XIII A, section 4, and article XIII C, sections 1 and 2, subdivisions (a), (d).

We turn to whether the initiative at issue here, which would add an exemption to the district's parcel tax, is a valid exercise of the initiative power under section 3 that should have been put to district voters.

### 2. Analysis

When construing constitutional provisions and statutes, including those enacted through voter initiative, we apply the same principles of interpretation. (*California Cannabis*, *supra*, 3 Cal.5th at p. 933.) "Our primary concern is giving effect to the intended purpose of the provisions at issue." (*Ibid*.) "When, as here, the voters enacted the provision, their intent governs." (*Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 212 (*Bighorn-Desert*).) To determine the voters' intent, we analyze the text of the provision in its relevant context, "ascribing to words their ordinary meaning" and "taking account of related provisions and the structure of the relevant statutory and constitutional scheme." (*California Cannabis*, at p. 933.)

28

Section 3 expressly states that the initiative power cannot be limited or prohibited when an initiative proposes "reducing or repealing any local tax, assessment, fee or charge." Section 3 further states that "[t]he power of initiative to affect local taxes, . . . shall be applicable to all local governments and neither the Legislature nor any local government charter shall impose a signature requirement higher than that applicable to statewide statutory initiatives."

Measure A taxes all parcels within the district assessed at over $2,000 at the rate of $647 per parcel. It includes exemptions for parcels used for single-family residences and whose owners fall into one or more of the following categories: (a) are senior citizens (i.e., aged 65 or older); (b) possess contiguous parcels; and/or (c) receive Supplemental Security Income for a disability. The parties agree that the district's Measure A parcel tax of $647 per parcel (for properties assessed at a value over $2,000) constitutes a "local tax" within the meaning of section 3.

The initiative would create a new exemption to any district parcel tax for persons who are over 65 years old and pay the property taxes on undeveloped or unimproved parcels. According to the proof of publication,[11] the initiative reads, " 'Upon application any property tax payer over the age of 65 shall be granted an exemption from any Lakeside Joint School District parcel tax if that parcel is unimproved.' " The initiative does not specifically reference Measure A or the district's current parcel tax. Instead, the initiative would create an exemption for qualifying taxpayers " 'from *any* [district] parcel tax if that parcel is unimproved.' "[12] (Italics added.)

---

[11] Under Elections Code section 9105, prior to circulating the petition for an initiative measure, the proponents of the proposed measure must "publish the Notice of Intention, and the ballot title and summary of the proposed measure in a newspaper of general circulation published in that county, and file proof of publication with the county elections official." (Elec. Code, § 9105, subd. (b).)

[12] At oral argument before this court, Loeber stated that the initiative does not merely "expand" the existing parcel tax exemption but "sets a new exemption" that is not

29

The district argues that the proposed change does not seek to reduce or repeal the Measure A tax rate and thus is not authorized by section 3. Loeber counters that the initiative is consistent with the purpose of section 3 and Proposition 218 because it "affects taxes and reduces revenue." (Boldface omitted.) He maintains that the initiative does reduce a local tax on undeveloped parcels. He asserts that "an exemption is the same as a rate cut except the taxpayer must make application."

Loeber does not cite any authority that holds that expanding or establishing a tax exemption constitutes "reducing" a tax within the meaning of section 3. Our independent research likewise has not located any authority directly on point. In the absence of binding precedent, we analyze the question before us using familiar tools of statutory interpretation.

In construing the voters' intent with respect to an initiative, "we begin with the text as the first and best indicator of intent." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 321.) Section 3 prohibits limiting or prohibiting the initiative power in "reducing or repealing any local tax, assessment, fee or charge." (Art. XIII C, § 3.) Article XIII C itself does not define "reducing" a local tax. Nor is the term defined elsewhere in Proposition 218 or in relevant case authority. In the absence of a special definition, we look to the term's ordinary meaning. (*California Cannabis*, *supra*, 3 Cal.5th at p. 933; *Bighorn-Desert*, *supra*, 39 Cal.4th at p. 212.)

"Reduce" means "[t]o contract, condense; to make smaller, diminish." (Oxford English Dict. Online, <https://www.oed.com/dictionary/reduce_v?tab=meaning_and_use#26408625> [as of June 24, 2024], <https://perma.cc/5NNM-A9QZ>; see also Webster's Third New Internat. Dict. (1993) p. 905, co1. 1 [defining "reduce" as "to diminish in size, amount, extent, or number"].) Consistent with its ordinary meaning, "reducing" a local tax may

tied to the current parcel tax exemption under Measure A and thus would not end when the current parcel tax expires.

be understood as an action that decreases the tax by making it smaller in size, amount, or extent.

This understanding, however, does not resolve the question before us. As applied to the existing parcel tax the proposed initiative would not reduce its "size" or "amount," because it does not change the tax rate which, even if the initiative passed, would remain at $647 per parcel. By its own terms, the initiative does not specify any direct effect on the existing parcel tax. Nevertheless, the initiative would establish a freestanding exemption (not tied to a specific parcel tax) for certain individuals. If "reducing" were given its broadest possible meaning, the initiative could be construed as reducing the "extent" of the tax because it presumably would lower the district's tax *revenue* from any district parcel tax.

Because the ordinary meaning of "reduce" is susceptible to both narrow and broad constructions, we apply other canons of statutory construction to determine whether section 3 preserves the initiative power solely for measures that reduce the *size* or *amount* of a tax as a whole or whether the provision extends to measures that reduce *tax revenue* paid by a subset of taxpayers. (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110.)

Several considerations lead us to conclude that the language of section 3 does not support the latter interpretation. First, section 3 expressly prohibits limits on initiatives aimed at "reducing" or "repealing" any local tax but does not refer to tax "revenue."

In addition, we accord " 'significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357 (*Valencia*).) Section 3 expressly prohibits limits on initiatives "reducing" or "repealing" taxes. If the voters had intended the word "reducing" to apply in its broadest sense to mean any decrease in the *extent* or application of a tax, it would not have been necessary to prohibit limits on initiatives "repealing" taxes. After all, repealing a tax

31

effectively reduces to zero the extent of the tax.  Loeber's interpretation of the statute would render the alternative phrase "repealing . . . any tax" surplusage.

Furthermore, section 3 must be considered in context of the "related provisions. . . and constitutional scheme."  (*California Cannabis*, *supra*, 3 Cal.5th at p. 933.)  "[A]n initiative's ' "language must also be construed in the context of the statute as a whole" ' and its ' "overall . . . scheme." ' "  (*Valencia*, *supra*, 3 Cal.5th at p. 358.)  While here we examine language that *reduces* a tax, other provisions in Article XIII C address *increases* in local government taxes.  In particular, section 2 states that a local government may not "impose, extend, or increase any general tax" without taxpayer approval and that such taxes will not be deemed increased if "imposed at a rate not higher than the maximum rate so approved."  (Art. XIII C, § 2, subd. (b) [general tax].)  Section 2 of article XIII C similarly provides that a local government may not "impose, extend, or increase any special tax" without taxpayer approval (by a two-thirds vote, as compared to the majority vote applicable to a general tax).  (*Id*., subd. (d) [special tax].)

Courts have construed the phrase "increase any [] tax" to refer to changes that augment or elevate tax *rates* or alter how the tax is calculated, resulting in an increased amount of tax on any person or parcel.  (See *AB Cellular LA, LLC v. City of Los Angeles* (2007) 150 Cal.App.4th 747, 762–763 [city's decision to revise methodology to extend cell tax to cover all airtime was an "increase" requiring voter approval under Proposition 218]; see also Gov. Code, § 53750, subds. (h)(1), (2) [defining the term " '[i]ncreased' " when applied to a tax, assessment, or property-related fee for purposes of articles XIII C and XIII D].)  We infer that, just as article XIII, section 2 applies to local government efforts to "increase" taxes by augmenting or increasing tax rates, section 3 uses the phrase "reducing . . . any tax" conversely to refer to changes that diminish or decrease the local tax rate or amount.  The proposed initiative, as described *ante*, would do neither.

The California Supreme Court's decision in *Bighorn-Desert* also supports the narrower interpretation of section 3.  (*Bighorn-Desert*, *supra*, 39 Cal.4th at p. 209.)  The

court in *Bighorn-Desert* analyzed a proposed initiative that sought to reduce a local public water district's domestic water rates and would have required voter preapproval for any future charge increases. (*Ibid*.) The court construed article XIII C in part to decide whether the initiative provision that would require the water district to obtain voter approval for new or future rate increases came within the meaning of " 'reducing or repealing.' " (*Id*. at p. 218.) The court held that to the extent the initiative sought to reduce existing water rates, it was "expressly authorize[d]" by section 3. (*Id*. at p. 216.) But to the extent the initiative would require voter approval for future rate increases, it fell outside the constitutional authority for the initiative power in matters of reducing or repealing local taxes. (*Id*. at p. 218.)

In reaching this conclusion, the Supreme Court rejected the initiative proponent's argument, relying on the second sentence of section 3, that the initiative imposing a voter-approval requirement on future charge increases "would 'affect' those charges and therefore [wa]s within the constitutional grant of initiative power." (*Bighorn-Desert*, *supra*, 39 Cal.4th at p. 218.) The court explained that the "evident purpose" of section 3's second sentence "is not to define how the initiative may be used to impact fees and charges, but instead to specify that the initiative power extends to charges imposed by all local public agencies and that the signature requirement applied to statewide initiatives may not be exceeded." (*Ibid*.) The court further reiterated that "[t]he scope of the initiative power is set by the previous sentence, stating that 'the initiative power shall not be prohibited or otherwise limited *in matters of reducing or repealing* any local tax, assessment, fee or charge.' " (*Ibid*.) Thus, the court held based on the text of section 3 "that the initiative power granted by that section extends only to 'reducing or repealing' taxes, assessments, fees, and charges" and does not include other measures that " 'affect' " local taxes. (*Ibid*., citing art. XIII C, § 3.) The court concluded that the water district properly withheld the proposed initiative from the ballot because the requirement

for voter approval for fee increases fell outside the constitutional authority for initiative power in matters to reduce or repeal local fees.  (*Id*. at p. 221.)

For these reasons, we decide that the initiative, which would create a new exemption applicable only to a subset of taxpayers in the district and would apply to *any* district parcel tax (including future parcel taxes), does not fall within the constitutional provision's reference to "reducing any tax."

We recognize that Loeber's argument resonates in some respects with the intent of Proposition 218 as stated in section 2 of the initiative's findings and declarations.  The findings and declarations provide that "[t]he provisions of this act shall be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent."  (Prop. 218, § 5, Stats. 1996; see *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 285.)  However, while these statements may be used as an aid in construing a statute, they "do not confer power, determine rights, or enlarge the scope of a measure."  (*People v. Canty* (2004) 32 Cal.4th 1266, 1280.)  Considering the plain language of section 3 and the text of the initiative at issue, Loeber's position that section 3 encompasses "anything having to do with an exemption, an exclusion, an exception, a deduction, a rate reduction, or any other thing that reduces the amount required to be paid" is not consistent with, and suggests a far broader reach, than the language of the constitutional text approved by the voters.

Neither the clear judicial policy of liberal construction in matters concerning the initiative power (*California Cannabis*, *supra*, 3 Cal.5th at p. 936), nor the intent that Proposition 218 be liberally construed " 'to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent' " (*id*. at p. 957) dictates interpreting section 3 in a manner inconsistent with its language.  We conclude that the

34

initiative falls outside the scope of and is not authorized by section 3. The district therefore was not obligated to call an election on the initiative.[13]

### III. DISPOSITION

The judgment is modified to deny the writ petition. We affirm the judgment as modified. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[13] Having determined that the initiative was not a valid exercise of the initiative power on matters of local tax reduction or repeal under section 3, we need not resolve the scope of the initiative power (if any) to school districts. We also need not address Loeber's remaining arguments concerning the applicable procedural statutes governing placement of the initiative on the ballot or the relevance of Government Code section 50079's statutory requirements for school district special taxes. We have considered all other arguments raised by Loeber and, to the extent that they were properly raised, we reject them.

_____

                               Danner, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P. J.

_____

Bromberg, J.

**H050688**
***Loeber v. Lakeside Joint School District***

Filed 7/10/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CARLTON LOEBER, | H050688 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 22CV402078) |
| v. | |
| LAKESIDE JOINT SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

BY THE COURT:

The opinion in this case filed June 24, 2024, was not certified for publication. After the court's review of a request under California Rules of Court, rule 8.1120(a), and it appearing that the opinion meets the standards for publication under California Rules of Court, rule 8.1105, it is therefore ordered that the opinion be published in the Official Reports.

_____

Danner, J.

_____

Bamattre-Manoukian, Acting P. J.

_____

Bromberg, J.

H050688
*Loeber v. Lakeside Joint School District*

Trial Court:          Santa Clara County Superior Court

Trial Judge:          The Honorable Julie A. Emede

Carlton Loeber, in pro. per., for Plaintiff and Appellant.

Seth Eckstein, Fagen, Friedman & Fulfrost, for Defendant and Respondent.

H050688
*Loeber v. Lakeside Joint School District*